852 A.2d 1182

**In re Nomination Petition of Kerry BENNINGHOFF, (Republican) Candidate for Representative in the General Assembly from the 171st Legislative District**

**Appeal of Kerry Benninghoff.**

**No. 41 MAP 2004.**

Supreme Court of Pennsylvania.

Submitted March 30, 2004.

Decided April 7, 2004.

Opinion filed June 24, 2004.

Richard P. Limburg, Esq., Dorothy M. Claeys, Esq., Lawrence J. Tabas, Esq., Philadelphia, for Kerry Benninghoff.

Courtney Lorraine Kishel, Esq., John Joseph Connelly, Jr., Esq., Camp Hill, for Paula A. Smith.

Vincent J. Dopko, Esq., Harrisburg, for State Ethics Commission.

Larry Boyle, Esq., for Bureau of Elections.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

Before us for disposition is the direct appeal of Kerry Benninghoff (Benninghoff) from the Opinion and Order of the

Commonwealth Court granting Paula F. Smith's (Smith) petition to set aside Benninghoff's nomination petition for the Office of Representative in the General Assembly from the 171st Legislative District, Centre County, Pennsylvania.[1] In granting Smith's petition, the Commonwealth Court struck Benninghoff's name from the primary election ballot. For the reasons that follow, we reverse.[2]

Benninghoff is an incumbent Republican, who filed a timely nomination petition in order to have his name placed on the Primary Election ballot for April 27, 2004. As required by law, Benninghoff attached a statement of financial interest (Financial Statement) to his nomination petition. See, Section 1104(b) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. 1104(b), which provides, in relevant part, as follows:

(2) Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.

(3) No petition to appear on the ballot for election shall be accepted by the respective state ... election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraph ... (2). Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.

The timely filed Financial Statement failed to list the Commonwealth as a direct source of income from Benninghoff's

1. Smith filed her action in the original jurisdiction of the Commonwealth Court pursuant to Section 764(2) of the Judicial Code, 42 Pa.C.S. § 764(2). Benninghoff then filed a direct appeal with this Court pursuant to Section 723(a) of the Code.

2. We entered a *per curiam* Order, with Opinion to follow, dated April 7, 2004, reversing the Commonwealth Court's Order dated March 23, 2004. We also directed in the Order that Benninghoff's name be printed on the ballot.

position as a state representative for the 171st District in Block 10 of the form provided by the State Ethics Commission.[3] Benninghoff did list his position as a state representative of the 171st District in Blocks 4, 5 and 6 of the form. Specifically, in Block 4, he listed his "job title" as "state representative"; in Block 5, he listed the political subdivision for which he is an "Official or Employee" as the "legislative district 171"; and, in Block 6 he listed "state representative" as his "occupation or profession." It is also worthy of note that although Benninghoff failed to designate the Commonwealth as a source of income in Block 10 of the Ethics Commission form, he did list a rental property located at 809 Green Street, Harrisburg, as an income source. *See* Reproduced Record at A–10, Statement of Financial Interest.

When Benninghoff failed to list the Commonwealth as the direct source of income, Smith, a registered Republican and qualified elector of the 171st District, filed a petition in Commonwealth Court to set aside Benninghoff's nomination petition. Specifically, Smith alleged that Benninghoff's omission was in violation of the mandate of Section 1105(b)(5) of the Ethics Act, requiring the name and address of any direct source of income over $1,300. Smith averred that this, in turn, constituted a fatal defect pursuant to Section 1104(b)(3) of the Ethics Act, specifying that "[f]ailure to file the [Financial Statement] in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot."

Benninghoff rejoined that although he admittedly failed to place the words "the Commonwealth" in Block 10 of the Ethics Commission form, he did indicate in Blocks 4, 5 and 6 that he was employed by the Commonwealth as a state representative for Legislative District 171. Thus, Benninghoff believed that he complied with the Ethics Act and adequately

**3.** Section 1105(a) of the Ethics Act provides that the Financial Statement shall be on a form prescribed by the Ethics Commission. 65 Pa.C.S. § 1105(a). Subparagraph (b)(5) of Section 1105 requires the person filing a Financial Statement to provide the name and address of any direct or indirect source of income totaling in the aggregate $1,300 or more. 65 Pa.C.S. § 1105(b)(5).

completed the form. In the alternative, Benninghoff argued that even if his Financial Statement were found to be deficient because of the omission, he should be permitted to correct the alleged defect. In a panel decision of the Commonwealth Court, Judge Dan Pellegrini, writing for the majority, agreed with Smith, finding that Benninghoff's omission constituted a fatal defect.

On appeal to this Court, Benninghoff argues, *inter alia*, that the Commonwealth Court erred in concluding that the failure to list the Commonwealth as a source of income in Block 10 of his Financial Statement is a "fatal defect" because he substantially complied with the requirements of the Ethics Act. Additionally, he argues that the Commonwealth Court erred by not recognizing that nominating petitions can be subject to amendment under the Election Code, and that the Ethics Act does not preclude amendment under the circumstances of this case. We agree.[4]

■ We note that prior to our review of this matter, without addressing the question of jurisdiction, we transferred the case to the State Ethics Commission and directed that the Commission issue a disposition regarding whether the defect at issue in this case was a fatal or amendable defect. Interestingly, the Commission concluded that Benninghoff's failure to list the Commonwealth as the direct source of his income as a state representative did not constitute a defect at all as it concluded such disclosure was not required under the Ethics Act. Specifically, the Commission noted that because the definition of "income" set forth in Section 1102 of the Ethics Act excludes "governmentally mandated payments or benefits" and Benninghoff's salary from his position as a state representative is a "governmentally mandated payment," he was not

---

4. Benninghoff also asserts that the Commonwealth Court improperly failed to hold a hearing and render a decision in this matter within the mandatory time requirements of the Election Code and, that the State Ethics Commission, not the Commonwealth Court, had primary jurisdiction of the matter. Based upon our disposition in Benninghoff's favor on the issues discussed in the body of this Opinion, we decline to decide these matters.

required to list the Commonwealth as a direct or indirect source of income in Block 10 of the Commission's form.

While we appreciate greatly the substantial time and effort expended by the Commission and its staff in deciding this issue, we reject its decisional basis.  Specifically, we do not agree with the Commission that Section 1102's exclusion of "governmentally mandated payments or benefits" from the definition of "income" was meant to exclude the receipt of a salary paid by a governmental entity.  In the first instance, the statutory definition of income expressly encompasses income in the ordinary sense, including, "[a]ny money ... received ... in recognition of services rendered in the past ... in the form of a salary...."[5]  It is substantially outside the boundaries of ordinary usage to equate the sorts of contractual interests arising in the course of an ordinary employment relationship with the government as giving rise to "governmentally mandated payments."  Thus, a natural reading of the statute strongly suggests that the General Assembly had no intention of creating a government-employer exception to the income disclosure requirement.

Indeed, the Commission's own instructions supplied with the Financial Disclosure Form recognize as much.  Regarding Block 10, the Commission instructs that "[t]his block contains the name and address of each source of income of $1,300 or more of gross income.  List the name and address of all

5.  The provision as a whole provides as follows:

"Income." Any money or thing of value received or to be received as a claim on future services or in recognition of services rendered in the past, whether in the form of a payment, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rent, capital gain, reward, severance payment, proceeds from the sale of a financial interest in a corporation, professional corporation, partnership or other entity resulting from termination or withdrawal therefrom upon assumption of public office or employment or any other form of recompense or any combination thereof.  The term refers to gross income and includes prize winnings and tax-exempt income. The term does not include gifts, governmentally mandated payments or benefits, retirement, pension or annuity payments funded totally by contributions of the public official or employee, or miscellaneous, incidental income of minor dependent children.

65  P.S. § 1102.

employers (*including governmental bodies*)." (Emphasis added). Further in the instructions, the Commission indicates "DO NOT INCLUDE": "governmentally mandated payments." Thus, the Commission's own form reflects the inherent difference between "governmentally mandated payments," and the receipt of a salary from a governmental entity for purposes of the Ethics Act.

Even if we were to discern an incongruity in the Act's definition of income, Section 1921(a) of the Statutory Construction Act provides that, "the object of all interpretations and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Pursuant to Section 1933 of the Act, 1 Pa.C.S. § 1933,

> [w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

To apply the foregoing rule to the definition of "Income" appearing in Section 1102 of the Ethics Act, we would first decide whether within the context of this case the extremely broad general definition of income and the narrow exclusion of governmentally mandated benefits can be construed to give full effect to the legislature's purpose and to both the general and specific language of the statute. The obvious purpose of the Ethics Act is to mandate disclosure of the financial dealings of public officials. To construe the salaries of state legislators as well as other incomes flowing to them as payments from a governmental entity that are "received ... in recognition of services rendered in the past ... in the form of a salary ..." fulfills the statutory purpose. To hold that compensation from governmental entities to their employees are exempt from disclosure as "governmentally mandated

payments," would thwart this statutory purpose. Construing compensation as reportable direct income and items such as workers' and unemployment compensation benefits, public assistance and the like as "governmentally mandated benefits" better fulfills the purpose of the Ethics Act and also gives full effect to both sections of the applicable statutory section. This reading of the provision comports with the purposes of the Ethics Act, which, *inter alia*, declares "that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust." Applying the Commission's broad reading of the exclusion, i.e., that "governmentally mandated payments or benefits" includes salary payments by a governmental entity, would frustrate the purposes of the Ethics Act and allow for the non-disclosure of numerous financial dealings of public officials with governmental bodies. Thus, based on the foregoing, we decline to adopt the Commission's reasoning.

■ Having concluded that Benninghoff's receipt of a salary for his position as a state representative in the 171st Legislative District, is not excluded from the definition of "income" set forth in the Ethics Act, we now address Benninghoff's argument that although he failed to list specifically the Commonwealth as a direct source of income in Block 10 of the Financial Statement form, nevertheless, he substantially complied with the requirement of Section 1105(b)(5) of the Ethics Act directing that the name and address of any direct or indirect source of income totaling over $1,300 be disclosed. Benninghoff notes that he specified in his Financial Statement that he is currently serving as a state representative. It is public knowledge that members of the General Assembly receive salaries. Moreover, those salaries are a matter of public record as they are available from the Pennsylvania Bulletin and they are also set forth in the Public Officials Compensation Act, 65 P.S. § 366.4(d). Benninghoff correctly notes that a person reviewing his Financial Statement would not need any additional information than that which is already

disclosed, in order to know that he draws a salary from the Commonwealth in his capacity as a State Representative.

We find that Benninghoff substantially complied with the requirements of the Ethics Act in submitting his Financial Statement. Listing the General Assembly or the Commonwealth as a direct source of income in Box 10 would not disclose anything that is not already disclosed by Benninghoff's submissions in Boxes 4, 5, and 6. Additionally, Section 1105(b), which enumerates what information is required on the Financial Statement, does not specifically require the information regarding sources of income to be listed in Box 10 of the form. While we recognize that Section 1105(a) indicates that the Financial Statement "shall be on a form prescribed by the Commission," and that the use of a form in this regard provides an orderly way in which the Commission can obtain the required information, where, as here, all of the information required by Section 1105(b)(5) can be facially obtained from the information provided on the form as a whole, we conclude that it is fully appropriate to permit an amendment to the form to duplicate, or triplicate, in Box 10, what is already plainly stated in Boxes 4, 5 and 6.

Nothing in the Ethics Act prohibits such an amendment under these circumstances. To the contrary, Section 1107(5) of the Ethics Act requires the Ethics Commission to

inspect statements of financial interests which have been filed in order to ascertain whether any reporting person has failed to file such a statement or has filed a deficient statement. If, upon inspection, it is determined that a reporting person has failed to file a statement of financial interests or that any statement which has been filed fails to conform with the requirements of section 1105 (relating to statement of financial interests), then the commission shall in writing notify the person. Such notice shall state in detail the deficiency and the penalties for failure to file or for filing a deficient statement of financial interests.

The regulations promulgated by the Commission grant the person who files a deficient Financial Statement a period of

twenty days in which to amend the statement. 51 Pa.Code § 19.3(c).[6] The Commission's form also reflects the possibility of amendment by providing a check-box to indicate whether the submitted statement has been amended.

The Commonwealth Court below relied on its decision in *In re Nomination Petition of Anastasio*, 820 A.2d 880 (Pa. Cmwlth.2003), affd. per curiam, 573 Pa. 512, 827 A.2d 373 (2003), which we find to be inapposite. In that case, Anastasio filed his Nomination Petition with a Financial Statement indicating "None" in Block 10. An objector filed a petition to strike arguing that Anastasio's failure to disclose any source of income was a fatal defect. The trial court granted the objection and struck Anastasio's Nomination Petition. The Commonwealth Court affirmed, and we, in turn, affirmed the Commonwealth Court by *per curiam* Order.

A review of the Commonwealth Court's opinion reveals that Anastasio contended that his only requirement, in filling out his Financial Statement, was to provide information to the best of his knowledge, information, and belief. *Anastasio*, 820 A.2d at 881. While the Commonwealth Court rejected this argument, it found, in any event, that Anastasio failed to meet his own test when he wrote "None" in Block 10 of his Financial Statement while testifying that knew he had such

**6.** This section provides, in relevant part:

§ 19.3. Late or deficient filings

(a) If an audit or inspection determines that a required filing is deficient or that a required filing has not been made, the Commission will provide written notice to the individual required to file, detailing the deficiency and the penalties for deficient filing or failure to file.

(b) If a complaint is received alleging that a required filing is deficient or has not been made, the Commission may elect to proceed in the matter under this section rather than through the investigative procedures of Chapter 21 (relating to investigations).

\* \* \*

(c) The individual notified in accordance with subsection (a) has 20 days from the mailing date of the notice to correct deficiencies or to file a Statement of Financial Interests. If an individual fails to file or to correct his statement within that time, the Commission will review

income, but he did not report it on the form. *Id.*[7] Thus, the Court held: "... Anastasio did *not* file his financial statement in accordance with the provisions of the chapter." (emphasis in original). Because of the "errors of omission" admittedly contained on Anast[a]sio's Financial Statement, there was no basis for any reviewer to ascertain whether Anastasio did, in fact, have supplemental income or income from employment sources.

The case before us stands in stark contrast. As we have already stated, it is abundantly clear from the Benninghoff's submitted form that he was a state representative earning the statutorily set and published income from the Commonwealth of Pennsylvania, and that his only other source of outside income was an apartment building in Harrisburg, which he specifically disclosed in Block 10 of his Financial Statement. Benninghoff, unlike Anastasio, did provide information to the best of his knowledge, information, and belief and, in fact, did provide all of the information required by any reviewer to ascertain Benninghoff's income from employment and supplemental sources.

We find the instant matter more analogous to the Commonwealth Court's decision in *Smith v. Brown*, 139 Pa.Cmwlth. 304, 590 A.2d 816 (1991). There, appellant, Al Smith, filed a petition to set aside the nomination petition of Newton D. Brown, a candidate for county commissioner who timely filed a nomination petition with an unsigned Financial Statement. After the time for filing had elapsed, Brown signed the

the matter to determine whether a civil penalty is appropriate under the act.

\* \* \*

**7.** Anastasio contended that he confused "regular income" and "supplemental income," and thought only the former had to be reported. The Commonwealth Court's opinion does not reveal how Anastasio defined these terms, or how he contended they affected his situation. Regardless, as noted in this Opinion, there is a vast distinction between Benninghoff's Financial Statement wherein he disclosed an employment position for which he receives a statutorily mandated and published salary and reported supplemental income, and Anastasio's utter failure to designate anything.

Financial Statement. Smith alleged that Brown was barred from appearing on the ballot based upon Section 4 of the Ethics Act, which provided, as now Section 1104(b)(3) provides, "Failure to file the statement in accordance with the provisions of this act shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot."

In affirming the trial court's decision denying Smith's petition, the Commonwealth Court first noted that under the Election Code, when an objector raises a defect that is apparent on the face of a nomination petition, it is within the discretion of the court to permit amendment. 25 P.S. § 29. In this regard, the court further held:

> Because the absence of a signature on Brown's financial disclosure statement was an error apparent on the face of the document, and Brown amended his petition, the trial court properly denied Smith's petition to set aside Brown's nomination petition.

> Furthermore, the purpose of the Act, that the candidates afford voters an opportunity to inspect their financial portfolio, is satisfied in this case because Brown timely filed his statement of financial interest with the county.

*Id.* at 818.

■ Thus, based on the foregoing, we hold that where, as here, a candidate has substantially complied with the requirements of the Ethics Act and there is a technical defect appearing on the face of a candidate's Financial Statement, such a defect is subject to the candidate's amendment. As the Commonwealth Court improperly granted Smith's petition to set aside Benninghoff's nomination petition without permitting Benninghoff the opportunity to amend, its decision is reversed.[8]

8. As noted previously, the exigency of the forthcoming primary election required us to decide this matter by *per curiam* Order dated April 7, 2004. We enter this Opinion to provide the parties, bench and bar with our rationale for that Order.

Justice CASTILLE files a concurring opinion in which Justice EAKIN joins.

Justice NIGRO files a concurring opinion.

Justice CASTILLE, concurring.

I joined in this Court's unanimous April 7, 2004 *per curiam* order, which reversed the decision of the Commonwealth Court and ordered that appellant Benninghoff's name be printed on the primary ballot. That mandate was consistent with the position I had taken when I dissented from this Court's earlier order of April 1, 2004, which transferred the matter to the State Ethics Commission and ordered it to file an advisory "disposition" by April 5, 2004. In a Dissenting Statement which was joined by Mr. Justice Nigro and Mr. Justice Saylor, I stated:

> I would hold that the omission here is an amendable defect since the Statement of Financial Interest Form clearly identifies Benninghoff as an incumbent State Representative. As such, Benninghoff is salaried and that salary is of public record. Therefore, I would hold that the omission of the salary information is harmless, and therefore, an amendable defect, and I would reverse the Commonwealth Court and allow petitioner's name to stay on the primary ballot.

*Nomination Petition of Benninghoff,* 847 A.2d 144 (Pa.2004) (Castille, J., dissenting), slip op. at 1.

In support of this Court's subsequent April 7, 2004 order, the Majority now holds that appellant "substantially complied" with the requirements of the Ethics Act even though he failed to list his legislative salary as "income" in Block 10 of the Statement of Financial Interest form; that the "technical defect" in appellant's failing to list the legislative salary is amendable, rejecting the State Ethics Commission's determination that this omission was not a defect at all; and that the Commonwealth Court erred in striking appellant's name from the ballot without permitting him an opportunity to amend. I write separately because I do not entirely agree with the Court's analysis and my own views on the question before us have evolved since my April 1, 2004 dissent.

I join the Majority Opinion to the extent that it reasons that the Ethics Act's definition of income encompasses governmental salaries. As the Majority notes, the official filing form and instructions prepared by the Commission itself recognize a distinction between "governmentally mandated payments" and "income" such as salaries; moreover, the instructions pertaining to Block 10 specifically direct candidates to list "all employers **(including governmental bodies)**" (emphasis supplied). There can be no question that appellant's Financial Statement, as filed, was defective on its face since he did not list the Commonwealth as a source of income in Block 10.

In striking appellant's name from the ballot, the Commonwealth Court panel below did not apply a "substantial compliance" rule. Instead, it relied upon the inflexible, *per se* approach to defects in financial statements adopted by the Commonwealth Court in *In re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth.2003), *aff'd per curiam without opinion,* 573 Pa. 512, 827 A.2d 373 (2003). If the draconian rule in *Anastasio* were deemed to have vitality and to be the controlling rule here, this Court would be constrained to affirm. In reaching the opposite conclusion, the Majority employs an analysis which is fundamentally different from the *Anastasio* approach. Notwithstanding that fact, the Majority goes to great lengths in an attempt to harmonize its new rule with *Anastasio,* thereby suggesting that *Anastasio* remains good law. I respectfully disagree with the new rule the Majority announces. Moreover, even if I were to agree with the new rule, I would candidly recognize that it is not consonant with the draconian rule set forth in *Anastasio* and, therefore, I would specifically disapprove of *Anastasio.*

Addressing the *Anastasio* question first, it must be emphasized that *Anastasio* lacks any precedential value in this Court. Our *per curiam* affirmance in *Anastasio,* by a vote of 4–3, was confined to the Commonwealth Court's **order;** we did not affirm the opinion below or the rationale it expressed. Mr. Justice (now Chief Justice) Cappy explained the extremely limited effect of such an order in *Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898 (1996):

In any appeal before us, this Court's entry of a *per curiam* order affirming or reversing the final order of a lower tribunal, after review and consideration of the issues on appeal to this Court, signifies this Court's agreement or disagreement with the lower tribunal's final disposition of the matter on appeal to us. An order of *per curiam* affirmance or reversal becomes the law of the case.

In the instance where this Court intends to not only affirm the result of the lower court decision but also the rationale used by the lower court in reaching that decision, we would enter the appropriate order **affirming on the basis of the opinion of the lower court,** elucidating the lower court's rationale where necessary or desirable. Our entry of an order of *per curiam* affirmance on the basis of the lower court's opinion, thus, means that we agree with the lower court's rationale employed in reaching its final disposition.

Unless we indicate that the *opinion* of the lower tribunal is affirmed *per curiam,* our order is not to be interpreted as adopting the rationale employed by the lower tribunal in reaching its final disposition.

*Id.* at 904 (emphases original). In addition, our *per curiam* affirmance in *Anastasio* was unaccompanied by a citation to any authority. It is settled that, "[w]hile an unexplained *per curiam* decision is certainly binding as the law of that case, by definition it establishes no precedent beyond the authority cited in the order." *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 17 (2003). Accordingly, *Anastasio* does not constrain this Court in any manner; it is relevant only to the extent that we may deem the Commonwealth Court's **unaffirmed ratio-nale** to be persuasive as a jurisprudential matter in that case.

The Majority avoids directly commenting on the persuasiveness of the analysis in the *Anastasio* opinion; instead, it attempts to distinguish the non-binding decision. The Majority thereby creates the mistaken impression that *Anastasio* was decided under today's new "substantial compliance" rule and may be harmonized because the factual distinctions warrant the differing outcomes. But, the *Anastasio* panel did not

anticipate today's decision. The panel did not analyze whether Anastasio's failure to list his "regular governmental income" in Block 10 was otherwise accounted for in other parts of the statement. Nor did the panel inquire into whether Anastasio's Financial Statement, as filed, might mislead persons who reviewed it as to his sources of income.

These sorts of factual niceties were irrelevant in *Anastasio* because the panel adopted a *per se* approach to defects in Financial Statements. This is so patently the case that a full quotation of the inflexible approach in *Anastasio* is warranted:

> 65 Pa.C.S. § 1105(b)(5), relating to Block 10, indicates that the statement shall contain *any* direct or indirect source of income of $1,300 or more. Anastasio admits that he knew he had such income, but he did not report it on the form. Thus, Anastasio did *not* file his financial statement in accordance with the provisions of the chapter. As the trial court stated, section 1104(b)(3) has real teeth and is quite harsh in its scheme.

> Moreover, in making his argument, Anastasio ignores the fact that the Act pertains to ethics and is to be liberally construed to promote *complete* financial disclosure. 65 Pa. C.S. § 1101.1. Anastasio relies on the liberal construction of the *Election Code* to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice. However, it is the *Ethics Act* in Title 65 that is dispositive here. Thus, we decline to interpret the Act to allow errors of omission.

820 A.2d at 881 (emphases original) (footnote omitted).

Given that the draconian approach in *Anastasio* is totally at odds with the more amorphous "substantial compliance" rule the Majority announces today, I do not agree with the Majority's effort to try to save the Commonwealth Court's *Anastasio* decision. Perhaps the Majority feels that *Anastasio* would have been decided the same way if it had been decided under today's new rule. But, that academic question is not before us: the *Anastasio* panel was not applying the *Benninghoff* rule. The Court should recognize that the new approach

today displaces *Anastasio* entirely and, at a minimum, we should specifically disapprove the contrary *Anastasio* rule.

Turning to the merits of the new rule adopted by the Majority, the dispositive question of statutory interpretation before the Court is whether the facial, patent defect in this nomination petition should be deemed "amendable" or "fatal." In answering this question, the Majority does not engage in an analysis of what the Ethics Act intends when it speaks of a "fatal defect"—a term which is not defined in the statute. Thus, for example, the Majority does not look to the occasion for this relatively recent amendment to the Ethics Act. Instead, the Majority formulates and applies an *ad hoc* standard to govern defects in financial statements. Under the Majority's formulation, patent defects will not be deemed fatal if a court later determines that the defective Statement otherwise was in "substantial compliance" with the provisions of the Ethics Act. Nothing in the plain language of the Act suggests that "fatal defect" can be defined to mean "non-substantial compliance," or that the General Assembly intended all disputes such as these to lead to lawsuits where courts will have to apply such an amorphous standard. Since there is no statutory basis for the new standard, and since the standard will involve the courts in unnecessary, fact-intensive determinations in the truncated time periods available to resolve election matters, I cannot accept the formulation.

The "fatal defect" language in the Ethics Act was added by amendment in 1989. I agree with former Chief Justice Nix's interpretation of the limited purpose and effect of that amendment:

> In *Commonwealth, State Ethics Commission v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982), ... a unanimous Court concluded that failure to timely file the required financial interests statements, in that case with the State Ethics Commission, was not a fatal defect to the nomination petition and could be cured by amendment. Our General Assembly, however, in apparent response to our *Baldwin* decision, amended and reenacted the Ethics Act in 1989 to include the following language: "Failure to file the [financial

interests] statement in accordance with the provisions of this act shall . . . . be a fatal defect to a petition to appear on the ballot." 65 P.S. § 404(b)(3). This language is clear and unambiguous. Our Statutory Construction Act of 1972 explicitly provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Hence, the General Assembly foreclosed the possibility for curing by amendment the untimely filing of a financial interests statement with the local governing authorities, and by the same token foreclosed our inquiry into the individual circumstances which may have contributed to the untimely filings.

*Petition of Cioppa,* 533 Pa. 564, 626 A.2d 146, 148–49 (1993) (Opinion Announcing Judgment of Court by Nix, C.J.) (footnote omitted). Given the occasion for the amendment, I would conclude that fatal defects are limited to **untimely** filings. Mere defects or omissions in **timely** filings, such as the ones at issue here, should be subject to amendment. Notably, the regulations promulgated by the Commission, which the Majority details, *see* Majority slip op. at 8–9 & n. 6., afford time for amendment, without drawing a distinction between substantially compliant defects and non-substantially compliant ones. I would not read the Majority's distinction into the statute. Since appellant's Statement was timely filed, the omission in Block 10 was not a fatal defect, but was one which is subject to amendment. Accordingly, the Commonwealth Court erred in denying appellant an opportunity to amend.

Justice EAKIN joins this concurring opinion.

Justice NIGRO, concurring.

Although I continue to disagree with this Court's per curiam affirmance in *In re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth.2003), *affd. per curiam,* 573 Pa. 512, 827 A.2d 373 (2003), I am able to join in the majority's disposition of the instant matter, as I believe that Benninghoff should be allowed to remain on the ballot, just as I believed Anastasio should have been allowed to remain on the ballot.