909 A.2d 1235

**In re NOMINATION PETITION OF Albert LITTLEPAGE, Jr., as Candidate for the Democratic Nomination for Traffic Court in Philadelphia County.**

**Appeal of Albert Littlepage, Jr.**

Supreme Court of Pennsylvania.

Submitted May 5, 2005.

Decided May 5, 2005.

Filed Nov. 22, 2006.

Louis Lawrence Boyle, Esq., for Bureau of Elections.

Margaret M. Tartaglione, for City of Philadelphia Commissioner's Office.

Stephen E. Skovron, Esq., George Bochetto, Esq., Philadelphia, for Albert Littlepage.

Thomas M. Nocella, Esq., Philadelphia, for Michael Horsey.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

 This Opinion follows our entry of an order dated May 5, 2005, affirming the Commonwealth Court's order granting Michael Horsey's (Objector) Petition to Set Aside the Nomination Petition of Albert Littlepage (Candidate) for the office of Philadelphia Traffic Court Judge.[1] In our May 5 order, we specified that an opinion would follow to explain why the lower court properly struck Candidate's nomination petition based upon deficiencies contained in his timely filed Statement of Financial Interest (Financial Statement), which was filed pursuant to Section 1104(b) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. §§ 1101, *et seq.*[2]

1. Our standard of review of a pure question of law is *de novo,* and our scope of review is plenary. *See Safe Harbor Water Power Corp. v. Fajt,* 583 Pa. 234, 876 A.2d 954, 966 n. 12 (2005).

2. Section 1104(6) provides, in relevant part:

The factual history of the case is straightforward. Prior to the March 8, 2005 filing deadline, Candidate filed a nominating petition to have his name placed on the ballot for the Democratic Primary Election for the position of Philadelphia Traffic Court Judge. He included with his papers a Financial Statement in accordance with Section 1104(b) of the Ethics Act. Thereafter, on March 15, 2005, Objector filed a petition to set aside Candidate's nomination petition on the basis that the Financial Statement submitted by Candidate contained a material omission, which rendered the Financial Statement, as well as the nominating petition fatally defective. Specifically, Objector alleged that Candidate failed to enter information regarding income Candidate derived from rental properties in Block 10 of the Financial Statement relating to "Direct or Indirect sources of Income" in accordance with Section 1105(b)(5) of the Ethics Act, which requires the person filing a Financial Statement to provide the name and address of any direct or indirect source of income totaling $1300 or more. Specifically, Objector claimed that Candidate indicated "None" in Block 10 when, in fact, he owned rental property that provided him with a source of income.[3] Thereafter, Candidate sought to amend his Financial Statement and, in fact, filed an amended statement on March 21, 2005. Therein, Candidate

> (2) Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.
> (3) No petition to appear on the ballot for election shall be accepted by the respective state … election officials unless the petition has appended thereto a statement of financial interests as set forth in [paragraph (2)]. Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.
> 65 Pa.C.S. § 1104(b).

3. Objector later attempted to append additional objections to his petition to set aside Candidate's nomination petition; however, these claims were untimely, as they were not filed within seven days of the filing of Candidate's nomination petition. *See* Election Code, 25 P.S. § 2937 (specifying that nomination petitions and papers shall be deemed valid unless objections are filed within seven days).

disclosed monies he derived from rental properties as a source of income in Block 10.

A three-judge panel of the common pleas court held a hearing concerning the nomination petition and objections. Following hearing, the court, relying on our prior decision in *In re Nomination Petition of Benninghoff,* 578 Pa. 402, 852 A.2d 1182, 1187 (2004) (interpreting the Ethics Act to permit an amendment to a financial statement where a candidate's initial Financial Statement substantially complies with its requirements), concluded that although Candidate failed to provide in his Financial Statement the requisite information cited by Objector, his omission did not reflect bad faith but rather, his mistaken interpretation of the required information. Accordingly, the court validated Candidate's amendment of his Financial Statement and permitted him to appear on the ballot.

President Judge Colins, writing for the Commonwealth Court, in a single-judge memorandum decision, reversed the common pleas court. The Commonwealth Court noted that although our Court in *Benninghoff* permitted a candidate to amend his Financial Statement despite its technical defect-namely, his failure to list his then current position as state representative as a source of income-we did so based upon the fact that the omitted information could be "facially obtained from information provided on the form as a whole." 852 A.2d at 1187. Specifically, in *Benninghoff,* an incumbent state representative seeking reelection failed to list his employment as a state representative in Block 10 (Direct and Indirect Sources of Income) of the financial interest form. Elsewhere on the form, however, in Blocks 4, 5, and 6, he variously listed his occupation or profession as a state representative (Block 4), indicated his status as an official or employee of the relevant state district (Block 5), and listed state representative as his profession (Block 6). *Id.* at 1184. Thus, we determined that since the three other disclosures of his position in question evinced "substantial compliance" with the requirements of the Act, Benninghoff's failure to list state representative in Block 10 was not a fatal defect. *Id.* at 1187.

The Commonwealth Court further noted that, in deciding *Benninghoff,* our Court did not expressly overrule their prior decision in *In re Anastasio,* 820 A.2d 880 (Pa.Cmwlth.2003), *aff'd per curiam,* 573 Pa. 512, 827 A.2d 373 (2003). In that case, candidate Anastasio indicated that he had no direct or indirect sources of income by indicating "none" in Block 10 of his Financial Statement. *Id.* at 881. Following objection, Anastasio admitted that he had such income for the relevant calendar year and that, therefore, his response to Block 10 indicating "none" was in error. Nevertheless, he maintained that his omission was unintentional and harmless, as he had provided the information on his financial form to the best of his knowledge and belief. *Id.* at 881.

The Commonwealth Court rejected Anastasio's basis for not completing the form as required, noting that he knew he had the income, which he failed to report. The court observed that the Ethics Act does not allow for "errors of omission." *Id.* Thus, the court held that his omission was fatal to his appearing on the ballot pursuant to Section 1104(b)(3) of the Ethics Act, *see supra* note 1, as he failed to "file the [financial statement] *in accordance with the provisions of this chapter.*" *Id.* (citing 65 Pa.C.S. § 1104(b)(3)) (emphasis added). In striking Anastasio from the ballot, the court recognized that "section 1104(b)(3) has real teeth and is quite harsh in its scheme." *Id.*

In *Benninghoff,* we distinguished *Anastasio,* noting the "vast distinction between Benninghoff's Financial Statement wherein he disclosed an employment position for which he receives a statutorily mandated and published salary and reported supplemental income, and Anastasio's utter failure to designate anything." *Benninghoff,* 852 A.2d at 1187 n. 7. We further noted that Benninghoff, unlike Anastasio, "provide[d] all of the information required by any reviewer to ascertain Benninghoff's income from employment and supplemental sources." *Id.* at 1188.

Because we did not overrule *Anastasio* in *Benninghoff,* the Commonwealth Court concluded that the facts of this case are more analogous to those of *Anastasio* than *Benninghoff.* The

court noted that, like Anastasio, Candidate testified that while he omitted certain information from his Financial Statement and that his form thus contained errors of omission, such omissions resulted from his misunderstanding as to what information was required on the form. Moreover, unlike candidate Benninghoff's Financial Statement, which facially contained the relevant information elsewhere on the form, here Candidate's Financial Statement lacked any other indication of the unreported income. Accordingly, the Commonwealth Court reversed the common pleas court decision rejecting Objector's petition to set aside Candidate's nomination petition.

Candidate argued that the Commonwealth Court erred because his situation more closely resembles that in *Benninghoff.* He claimed that because the information omitted from his original Financial Statement, *i.e.*, income from rental properties, was ascertainable by way of public records, he, like Benninghoff, substantially complied with the Ethics Act and his subsequently amended Financial Statement should be allowed as it was in *Benninghoff.* Further, Candidate argued that the Commonwealth Court erred in relying on *Anastasio* because this Court's decision in *Benninghoff* eviscerated *Anastasio.*

As it appears that the lower courts have had difficulty interpreting our prior precedent,[4] we now take the opportunity to clarify our reasoning in *Benninghoff* and consider *Anastasio* in its light. In *Benninghoff,* we permitted a candidate to amend his financial statement to correct a technical defect where the candidate had substantially complied with the Eth-

---

**4.** *See, e.g., In re Nominating Petitions of Braxton,* 583 Pa. 35, 874 A.2d 1143 (2005) (*per curiam* ) (reversing as contrary to *Benninghoff* the Commonwealth Court's decision permitting candidate to amend his Statement of Financial Interest and remain on the ballot where candidate did not disclose rental income and the names and addresses of creditors holding mortgages on his rental properties); *In re Nomination Petition of Katofsky,* 582 Pa. 557, 872 A.2d 1196 (2005) (*per curiam* ) (reversing, as contrary to *Benninghoff,* the Commonwealth Court's decision permitting a candidate to remain on the ballot where his Statement of Financial Interest failed to disclose sources of income which were not ascertainable from the face of such statement).

ics Act to such an extent that all of the statutorily required disclosures could "be facially obtained from the information provided on the form as a whole." 852 A.2d at 1187. In so concluding, we noted that Benninghoff listed his occupation as a state representative in Blocks 4, 5, and 6 of the form and merely failed to identify state representative as a source of his income by entering it in Block 10 of the form. Because "all of the information required by Section 1105(b)(5) could be facially obtained from the information provided by the form as a whole, we concluded that it was fully appropriate to permit an amendment to the form to duplicate or triplicate what is already plainly stated in Boxes 4, 5, and 6." *Id.* Further, we rejected the argument that *Anastasio* directed a contrary ruling, distinguishing Benninghoff's multiple conspicuous disclosures of his employment as a state representative elsewhere on the Financial Statement from Anastasio's categorical omission because in the latter case there was no basis for any reviewer to ascertain whether Anastasio did, in fact, have supplemental income or income from employment sources. *Id.* at 1188.

In further support of his claims, Candidate quotes, extensively and exclusively, Mr. Justice Castille's concurring opinion in *Benninghoff* for the proposition that our decision in *Benninghoff* and the Commonwealth Court's decision in *Anastasio* cannot be reconciled and that, therefore, the *Anastasio* decision is of no moment. In that opinion, the concurrence suggested that the Commonwealth Court could not have interpreted *Anastasio* in line with Benninghoff's "substantial compliance" test because that test had not yet been enunciated when *Anastasio* was decided. 852 A.2d at 1191–1192. The concurrence further proposed that the only possible "fatal defect" for the purposes of the Ethics Act that would prohibit amendment is untimeliness. *Id.* at 1192. The concurrence argued that any other defect should be subject to amendment because the plain language of the statute does not distinguish substantially compliant defects from non-substantially compliant defects.[5] The concurrence ultimately joined in the majori-

5. The *Benninghoff* majority emphasized that Section 1104(b)(3) of the Ethics Act specifies that "[f]ailure to file the [Financial Statement] in

ty's disposition of *Benninghoff,* on the basis that Benninghoff was permitted to amend his Financial Statement because his filing of the initial Financial Statement was timely.

■ Regardless of the specific language used by the Commonwealth Court in *Anastasio,* the facts and result of that case square with our decision in *Benninghoff.* As the lower court noted in the case at bar, we did not abrogate *Anastasio* in *Benninghoff,* and the facts of this case closely track those in *Anastasio.* Here, Candidate's error is akin, if not identical, to *Anastasio* because Candidate gave no indication anywhere in his statement that he drew income from other sources as required in Block 10 even though he had such income. *See Anastasio; Braxton; Katofsky.* A reviewer of the form would have absolutely no reason to believe Candidate received such income. Thus, there is not sufficient information on the face of Candidate's Financial Statement to constitute substantial compliance with the requirements of the Act. *Benninghoff,* 852 A.2d at 1187.

■ Candidate's argument that his ownership of the properties was public record does not provide an exemption from the purpose of the Ethics Act, which is to inform the voters where a candidate's financial interests lie prior to election. Candidate's contention that his ownership of the rental properties was public record in no way indicates that he derives income from those properties, unlike Benninghoff whose occupation in and of itself provides the public with notice that he is a salaried state employee. In *Benninghoff,* the availability of a candidate's salary as a matter of public record was emphasized solely to demonstrate that the candidate's disclosure of his occupation in sections of the Financial

accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on a ballot." Further, the "provisions of this chapter" in Section 1105(b) require a candidate to report any income of over $1300. Under Section 1101.1, which states that the Act is to be "liberally construed to promote complete financial disclosure," we determined that an omission in a certain block of the disclosure form does not invalidate the entire Financial Statement if the pertinent information is disclosed elsewhere on the face of the document.

Statement provided sufficient notice of his financial interest in his public employment. 852 A.2d at 1187. Thus, Benninghoff did not omit a source of income. This is in stark contrast to the case *sub judice* in which Candidate gave no indication of supplementary income from rental properties in any section of his Financial Statement. Moreover, we have declined to accommodate such omissions even where the undisclosed information was a matter of public record.[6] *See Braxton; See also Anastasio.*

Because Candidate failed to disclose income that he derived from rental properties anywhere on the face of his Financial Statement, Candidate's error is fatal to his nomination petition under the Ethics Act. Accordingly, the Commonwealth Court properly struck Candidate from appearing on the ballot for elective office as we affirmed by *per curiam* order dated May 5, 2005.

Chief Justice CAPPY, and Justice CASTILLE, Justice NEWMAN, and Justice SAYLOR join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I join the majority's decision affirming the Commonwealth Court's order, as it applied existing precedent. However, I write separately to reiterate my view that *In re Benninghoff,* 578 Pa. 402, 852 A.2d 1182 (2004), and *In re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth.2003), *aff'd per curiam,* 573 Pa. 512, 827 A.2d 373 (2003), are irreconcilable and that "fatal defects [of nomination petitions] are limited to *untimely* filings." *See Benninghoff,* at 1190, 1192 (Castille, J., concurring, joined by Eakin, J.). Under this

---

6. In the determination of whether a defect in a candidate's financial disclosure qualifies as fatal, the inquiry does not turn on the *mens rea* of the candidate in completing the form, *i.e.,* whether or not the candidate thought he was fully disclosing his assets, nor does the inquiry hinge on the availability of information in public records outside of the information disclosed. The public policy animating the Act is to allow the electorate to determine both the source of a candidate's income and identify the candidate's debtors from the financial statement **alone.**

view, Candidate's amended nomination petition would have been allowed, and he would have appeared on the ballot.