937 A.2d 364

**In re Nomination of Greg PAULMIER for the Office of City Council of the City of Philadelphia Democratic Primary May 2, 2007 from the 31st Legislative District.**

**Petition of Greg Paulmier.**

Supreme Court of Pennsylvania.

Submitted April 12, 2007.

Decided April 24, 2007.

Clarifying Opinion Dec. 28, 2007.

434

Louis Lawrence Boyle, for Bureau of Elections, participant.

Margaret M. Tartaglione, for City Com'rs of Philadelphia, participant.

Samuel C. Stretton, Law Office of Samuel C. Stretton, West Chester, for Greg Paulmier, petitioner.

Robert Thomas Vance, for Cindy M. Bass, respondent.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

PER CURIAM.

## *ORDER*

AND NOW, this 24th day of April, 2007, the Petition for Allowance of Appeal is hereby GRANTED. The Order of the Commonwealth Court is REVERSED, and the Order of the Court of Common Pleas is VACATED. Opinion to follow.

Chief Justice CAPPY.

## *OPINION*

On April 24, 2007 this Court reversed the Commonwealth Court and vacated the order of the trial court to strike Greg Paulmier from the ballot for the Democratic primary election for the 8th Council District of Philadelphia scheduled for May 15, 2007. The *per curiam* order was expedited in order to settle the issue of whether Paulmier's name would appear on the ballot in time for the election. This opinion now follows, to clarify the issue of compliance on a statement of financial interests under Section 1105 of the Public Official and Employee Ethics Act, 65 Pa.C.S. § 1101, *et seq.*

Paulmier filed a timely nomination petition to enter the race for Philadelphia City Council. He also filed a timely statement of financial interests pursuant to Section 1105 of the Ethics Act, which requires, *inter alia,* that a candidate disclose the names and addresses of all direct and indirect sources of income. Cindy Bass, as objector, then filed a petition to strike Paulmier's nomination petition, alleging that the statement of financial interests contained material defects and/or omissions that would require Paulmier's name to be removed from the ballot. Specifically, Bass complained that

Paulmier had not disclosed the addresses of certain rental properties and the names of those tenants who had paid Paulmier $1,300 or more in the previous year. Instead, Paulmier had listed his occupation on block 6 of the form as "Housing Specialist." In block 10, which requires the disclosure of direct or indirect sources of income, Paulmier listed "rental income." Subsequent to the petition to strike his name from the ballot, Paulmier made a timely amendment of his statement to include the names and addresses of his tenants.

A three-judge panel of the Court of Common Pleas dismissed Paulmier's nomination petition and ordered his name to be struck from the ballot. The trial court relied on this Court's *per curiam* order in *In re Braxton,* 583 Pa. 35, 874 A.2d 1143 (2005).

On appeal, Senior Judge McCloskey, sitting for the Commonwealth Court, affirmed citing *Braxton,* but also referencing the precedent of *In re Anastasio,* 820 A.2d 880 (Pa. Cmwlth.Ct.2003), *affirmed without opinion,* 573 Pa. 512, 827 A.2d 373 (2003), *In re Benninghoff,* 578 Pa. 402, 852 A.2d 1182 (2004) and *In re Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006).

Paulmier petitioned this Court arguing that the Commonwealth Court erred in finding that he did not make sufficient disclosure of the source of his income, or in the alternative, that if his disclosure was deficient, it was a mere technical defect, subject to amendment under this Court's holding in *Benninghoff.* Paulmier asserts that he believed that because he was self-employed as a housing specialist, he complied in good faith with the instructions on the financial statement form when he listed "rental income" as the sole source of his income, and "Housing Specialist" as his occupation. He submits that he did not understand or believe that the form required that he list the names of his individual tenants or the addresses of his rental properties. He contends that an attorney, accountant, self-employed shop owner or contractor would only have to list their income and not every client or person who bought a product from them. This is because a self-employed person lists the name of his business as the

source of his income, not the name of each customer who paid the self-employed person more than $1,300 per year.

Paulmier then submits that even if his interpretation of the disclosure requirement was incorrect, his statement of financial interest was subject to amendment. He argues that when the information on the face of the form is technically deficient, but still sufficient to give notice of the source of income, this Court created a right to amend and bring the financial statement into full compliance with the requirements of the Ethics Act in *Benninghoff*, 852 A.2d at 1182. Paulmier contends that he provided the pertinent information about the source of his income as a sole proprietor who managed rental properties, distinguishing this case from the facts that constituted a fatal defect in *Anastasio*, 820 A.2d at 881, and in *Littlepage*, 909 A.2d at 1237, where the candidates listed "none" in block 10 of their financial statements, even though both candidates did receive income. Paulmier further notes that his disclosure on the statement of financial interests form was sufficient to give any reviewer notice of his ownership of rental properties, which would allow the reviewer to consult the public record for further information. Having given proper notice, Paulmier argues that if this Court finds that his first disclosure did not fully comply with the Act, then we should accept his timely amendment in which he disclosed the names and addresses of his individual tenants.[1]

Bass, as objector, argues as the instructions provided by the State Ethics Commission on the financial statement form specifically demand disclosure of "the source and address, not the dollar amount, of any payment, fee . . . rental income . . . [of $1,300 or more of gross income,]" that the instructions

---

1. In his Petition for Allowance of Appeal, Paulmier raises a second argument concerning the standing of the objector. He asserts that there was no evidence of record to show that the objector had standing to object, or that she lived in the district or was a registered Democratic voter. The issue of standing was not raised to the trial court, but Paulmier argues that standing is so closely tied to jurisdiction in this case that the issue cannot be waived. Our precedent is clear that this is not true; standing is not a jurisdictional question. *In re deYoung I*, 588 Pa. 194, 903 A.2d 1164, 1168 (2006). Therefore, this issue was waived and will not be addressed here.

clearly state that the candidate should list the address of any rental property from which he derived income of $1,300 or more during the prior year. As Paulmier failed to do that, he did not comply with the Ethics Act. Further, his statement is not subject to amendment, because unlike the candidate in *Benninghoff,* the addresses of Paulmier's rental properties and the names of his tenants cannot be obtained from the information stated on the face of the financial statement, nor is such information a matter of public record. Therefore, Bass argues that Paulmier was properly removed from the ballot for his failure to make a complete financial disclosure as required by the Ethics Act.

 This Court granted allowance of appeal to determine whether the trial court erred in its determination that Paulmier's disclosures constituted a fatal defect that would preclude his name from appearing on the ballot. On review, an appellate court may reverse a decision concerning a challenge to a nomination petition if the findings of fact are not supported by substantial evidence, there was an abuse of discretion or there was an error of law. *In re Carroll,* 586 Pa. 624, 896 A.2d 566, 573 (Pa.2006). But here, the question concerns the proper interpretation of the Ethics Act. This is a question of statutory interpretation, and therefore, a question of law. *Id.* Accordingly, our scope in reviewing the record is plenary and our standard is *de novo,* which means we may consider the entire record and that we owe no deference to the lower courts. *Id.*

As an introductory note to the law that governs election matters, this Court observes that there are two competing cases interpreting the "fatal defect" rule related to candidate error in financial disclosure governed by 65 Pa.C.S. § 1104. On one hand, under this Court's *per curiam* order without opinion in *Anastasio,* 573 Pa. 512, 827 A.2d 373 (2003), a candidate who fails to strictly comply with the Ethics Act is removed from the ballot, and on the other hand, under our holding in *Benninghoff,* 852 A.2d at 1182, a candidate is allowed, under certain conditions, to amend his or her statement in order to bring it into compliance. Our subsequent case law has strained to reconcile the disparate policies behind

these two cases, and today this Court will revisit the fatal defect rule in order to provide clear and definitive guidance to candidates who run for election in the Commonwealth.

Next, it is important to observe that two statutory schemes govern election matters, the aforementioned Ethics Act and the Pennsylvania Election Code, 25 P.S. § 2600 *et seq.* This Court has held that these two statutes are *in pari materia,* as they relate to the same subject matter, and therefore, the language of the statutes must be construed together, if possible. *Commonwealth, State Ethics Com'n v. Cresson,* 528 Pa. 339, 597 A.2d 1146, 1149 (1991). *See also* 1 Pa.C.S. § 1932. Notably, a candidate wishing to run for election must follow the provisions of both statutes as it is the Election Code which governs the filing of a candidate's nomination petition with the Secretary of the Commonwealth, but the Ethics Act that mandates that a statement of financial interests be appended.

The Ethics Act states that the failure to file the financial statement in accordance with the provisions of the Act is a fatal defect for a petition to appear on the ballot. *See* 65 Pa.C.S. § 1104. A plurality of this Court considered the language of the fatality rule in *Petition of Cioppa,* 533 Pa. 564, 626 A.2d 146, 148–49 (1993) (Opinion Announcing the Judgment of the Court), and held that the failure to file or the untimely filing of a financial statement is "fatal" and prevents a candidate's name from appearing on the ballot. Then in *Anastasio,* the Commonwealth Court construed Section 1104 to apply the fatality rule to material defects related to the contents of the financial statement. *Anastasio,* 820 A.2d at 881. The candidate in *Anastasio* wrote "none" in block 10 to describe the source of his income, even though he did have source(s) of income. *Id.* at 881. The Commonwealth Court applied a strict *per se* rule, finding that any failure to accurately and fully complete the financial statement constituted a fatal and material defect which would bar the candidate's name from the ballot. *Id.* The Commonwealth Court specifically noted that although the Election Code is to be liberally construed to "protect a candidate's right to run for office and

the voters' right to elect the candidate of their choice," the requirement for filing the financial statement is located in the Ethics Act which "is to be liberally construed to promote *complete* disclosure." *Id.* (Emphasis in original). Therefore, the Commonwealth Court declined to apply the construction of the Election Code to the case, and instead applied the rationale behind the Ethics Act alone, paving the way for strict application of the fatality rule to any material defect on the financial statement. *Id.*

This Court affirmed the Commonwealth Court in *Anastasio* without opinion. *Anastasio,* 827 A.2d at 373. But the application of the fatality rule was then severely restricted by our decision in *Benninghoff,* 852 A.2d at 1182. In *Benninghoff,* the candidate, an incumbent state representative, filed a timely financial statement. *Id.* at 1184. He listed the Commonwealth as his employer in block 6, but failed to do so once again in block 10, where he was required to disclose the source of his income, i.e., his employer. *Id.* This Court noted that under 65 Pa.C.S. § 1107(5), the Ethics Act requires the Ethics Commission to inspect statements of financial interests, and to inform a candidate if his or her statement fails to conform to the requirements and to list, in writing, the deficiency and any resultant penalty. *Id.* at 1187. This Court further considered that the regulations promulgated by the Commission grant the person who files a deficient statement twenty days to amend. *Id. See* 51, 852 A.2d 1182 Pa.Code § 19.3(c). Therefore, we allowed the candidate in *Benninghoff* to amend his petition in order to stay on the ballot, stating that as all the required information could be obtained from the face of the form, the candidate had substantially complied and his defect was not fatal, but merely technical. *Id.*

In doing so, this Court addressed the Commonwealth Court's decision in *Anastasio* to apply the *per se* rule of fatality. We noted our *per curiam* affirmance, but found that *Anastasio* was inapposite because that candidate failed to designate anything on block 10 of the form, instead listing "none," despite the fact that he had income. *Id.* at 1188. Rather, this Court found the matter in *Benninghoff* to be

analogous to *Smith v. Brown,* 139 Pa.Cmwlth. 304, 590 A.2d 816 (1991), where the Commonwealth Court considered whether the fact that the statement of financial interests did not include a signature would bar the candidate from appearing on the ballot. *Id.* at 1189, 590 A.2d 816. This Court specifically approved of the fact that in *Smith,* the Commonwealth Court allowed the candidate to reform his financial statement, noting the importance of allowing an amendment under the Ethics Act in order to respect the language of the Elections Code, which is to be liberally construed to both protect the franchise as well as the right of the candidate to appear on the ballot. *Id.* This was a departure from the rationale used by the Commonwealth Court in *Anastasio* which held that the goal of the Election Code had no bearing with respect to statements of financial interests. *Anastasio,* 820 A.2d at 881.

Mr. Justice Castille wrote a concurring opinion in *Benninghoff,* joined by Mr. Justice Eakin. *Benninghoff,* 852 A.2d at 1189. He cautioned that the new rule announced by this Court in *Benninghoff* was not consonant with the draconian *per se* rule imposed by *Anastasio,* and that he would thus specifically reject *Anastasio. Id.* at 1190. Justice Castille emphasized that the *per curiam* order in *Anastasio* lacked any precedential value binding on this Court, because we did not affirm the opinion below or the rationale it expressed. *Id.* at 1190–91. Justice Castille considered the fatal defect language of Section 1104 and expressed his support for the rule announced in the *Cioppa* plurality, which would conclude that fatal defects are limited to untimely filings, and that mere defects or omissions in a petition otherwise timely filed would be subject to amendment. *Id.* at 1192 (citing *Cioppa,* 626 A.2d at 148–49).

The divergence between *Anastasio's per se* rule and *Benninghoff's* more lenient substantial compliance rule is explained when we consider the fact that the Commonwealth Court's rationale in *Anastasio* was based on a consideration of the language of the Ethics Act alone, which promotes the goal of full financial disclosure. *See* 65 Pa.C.S. § 1101.1(a). However, in *Benninghoff,* this Court specifically approved of recon-

ciling that goal with the language of the Election Code, which requires a liberal construction in order to protect a candidate's right to run for office and the voters' rights to elect the candidate of their choice. *See Petition of Ross,* 411 Pa. 45, 190 A.2d 719, 719 (1963). This divergence is irreconcilable, and so this Court now affirms that the *Benninghoff* rationale is correct, because as we stated above, the Ethics Act and the Election Code are *in pari materia,* and therefore, the language of each act should be considered together.[2] When the language of the Ethics Act is tempered by the language of the Election Code, it is clear that the intent of the Legislature is to encourage **both** full financial disclosure and protect voter choice. Read together, the Legislative intent is clearly best served by a rule that allows a timely filer to amend in order to come into full compliance giving the public both the benefit of full financial disclosure and the broadest choice of representatives. Therefore, we now hold that the fatality rule announced in Section 1104 of the Ethics Act was intended by the Legislature to bar only those candidates from the ballot who fail to file statements of financial interests or who file them in an untimely manner. Section 1104 does not bar any candidate from the ballot if he or she files in a timely manner, even if there are defects on the face of the form, so long as that candidate subsequently amends the form to correct the defect and comes into compliance with the Act in a timely manner. In other words, all defects related to the content of disclosures on a timely filed statement of financial interest are subject to timely amendment.[3] With this holding this Court specifically

**2.** It is important to note that the *in pari materia* rule only mandates that the language of statutes related to the same subjects be read together "if possible." *See* 1 Pa.C.S. § 1932. Here, the plain language of the Ethics Act and the Election Code can be read as one statute without creating contradiction, which affirms that the Legislature intended that these statutes be read *in pari materia.*

**3.** The Ethics Commission regulation at 51 Pa.Code § 19.3(c) provides twenty days from notice of a deficiency to amend a statement of financial interest. It is also important to note that Section 1105 of the Ethics Act requires that the statement of financial interests be provided to the best of the knowledge, information and belief of the person required to file. This means that candidates must still file in good faith,

overrules our *per curiam* order in *Anastasio,* 827 A.2d at 373, as well as its progeny such as *Littlepage,* 909 A.2d at 1235 and *In re Braxton,* 874 A.2d at 1143. We note that because the Election Code and the Ethics Act are *in pari materia,* the consideration of the language of the Ethics Act alone, which undergirds the *per se* rule in the *Anastasio* line of caselaw was in error. And, of course, the doctrine of *stare decisis* was never intended to be used as a principle to perpetuate errone-ous rules of law. *Lewis v. W.C.A.B.,* 591 Pa. 490, 919 A.2d 922, 928 (2007).

Having settled that area of law, this Court is left with the task of determining exactly what a self-employed candidate like Paulmier must disclose, either in the first timely filing or by timely amendment, in order to comply with the Ethics Act. To do so, this Court must examine the pertinent language of the Ethics Act under the Statutory Construction Act. 1 Pa. C.S. §§ 1501, *et seq.* The rules of statutory construction provide that intent of the Legislature is always our polestar when considering the interpretation and construction of stat-utes. *See* 1 Pa.C.S. § 1921(a). The best evidence of legisla-tive intent is the words used by the General Assembly. If the words are clear and free from all ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Only when the Legislature uses words that are not explicit will this Court turn to other factors to ascertain its intent. 1 Pa.C.S. § 1921(c). We are to construe the words of a statute according to the rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a). Further, the Legislature instructs that in ascertaining its intent, we may presume that it did not intend a result that is absurd, unreasonable or impossible of execu-tion. 1 Pa.C.S. § 1922(1).

The words of the Ethics Act require that a candidate for office file a statement of financial interests submitting infor-mation from the prior calendar year which includes the "name and address of any direct or indirect source of income totaling

even though they do have an opportunity to amend. *See* 65 Pa.C.S. § 1105(a). *See also* 65 Pa.C.S. § 1107(5).

in the aggregate of $1,300 or more." 65 Pa.C.S. § 1105(b)(5). "Income" is defined by the Ethics Act as "Any money or thing of value received or to be received as a claim on future services or in recognition of services rendered in the past, whether in the form of a payment, fee, salary ... or rent...." The Act then defines the source of income as, "Any person who is a provider of an item reportable under Section 1105." 65 Pa.C.S. § 1102. "Person" is further defined to include a "business" or an "individual." *Id.* And the definition of "business" includes "sole proprietorships" or "self-employed individuals" as well as "corporations" or "any legal entity organized for profit." *Id.* The word "direct" is defined as "without intervening persons, influence or factor; immediate." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2nd ed. 1987). Conversely, "indirect" is defined as "coming or resulting otherwise than directly or immediately." *Id.*

Given the words of the Ethics Act, and the definitions the Legislature has provided, it is clear that all income, directly or indirectly received, must be taken into account, and that the "source" of that income must be disclosed. Therefore, when a candidate like Paulmier receives over $1,300 dollars in a year from a specific source, he must identify the source, either the business or individual, who made that particular contribution to his income. Notably, in the case of rental income, the statutory definitions are written so broadly that there are two distinct sources to which a candidate like Paulmier might attribute his income. A "source" is any individual who provides income, and as Paulmier has 13 tenants who each pay him more than $1,300 a year in rental fees, each tenant is a statutorily defined source of Paulmier's income. At the same time, the statute also defines "source" as a business which includes a sole proprietorship or self-employed individual. A sole proprietorship references an "individual" who is an "owner of a business establishment." THE RANDOM HOUSE DICTIONARY. A self-employed individual is one who "earn[s] one's living directly from one's own profession or business, rather than as an employee earning salary or commission from another." *Id.* The rents Paulmier receives

come to him as a self-employed business owner of rental properties, not as salary from an employer. Further, by statutory definition, his self-employment is a business which is a source of his income. Therefore, the Ethics Act has defined "source" in a manner that shows that the same contribution to income, in this case a year's worth of rent, can be attributed to two, distinct, statutorily defined persons, one a business or sole proprietorship, and the other an individual, the renter who pays Paulmier over $1,300 of rent in a year. This same scenario would be true for any other self-employed individual such as a doctor, lawyer, plumber, freelance writer or store owner.

This raises the question of which source to disclose. Section 1105 demands the disclosure of "any direct or indirect source of income." As previously stated, "source" is a "person who contributes [income]," and "person" is any "individual **or** business." 65 Pa.C.S. § 1105(b)(5) (emphasis added). Therefore, the Legislature's words, upon incorporating the statutory definition, are a demand for the disclosure of "any direct or indirect contribution of income from an individual **or** business." The word "or" is defined as a conjunction "used to connect words, phrases, or clauses representing alternatives." THE RANDOM HOUSE DICTIONARY. In other words, "or" is disjunctive. It means one or the other of two or more alternatives. So it would seem that the Legislature intended that with respect to a specific contribution to income, in this case a year's worth of rental payments, a candidate must disclose that contribution's source, and when that same contribution to income has more than one statutorily defined source, the candidate may list either the individual **or** business that serves as a source of that income. In this case, that would require a disclosure of each individual tenant's name and address, **or** the disclosure of Paulmier's business and business address.

This holding is inapposite to that of the Commonwealth Court in *In re deYoung II,* 900 A.2d 961 (Pa.Cmwlth. Ct.2006) in which the court decided that the self-employed like

Paulmier are required to divulge the *individual* sources of their income. In *deYoung II,* a candidate disclosed that she was a community minister, writer and consultant. *Id.* at 962. In other words, she had disclosed self-employment as the business source of her income. Having listed a source to which she could attribute her income, she did not record the fact that one of her clients had individually paid her more than $1,300. *Id.* at 963. The Commonwealth Court determined that listing one's own name as a self-employed individual was not sufficient to provide the public with an accurate picture of the source of the candidate's income. *Id.* at 965. The rationale behind the Commonwealth Court's decision was the fact that the Legislature has stated that the Ethics Act should be liberally construed to promote complete financial disclosure. *Id. See* 65 Pa.C.S. § 1101.1(a). But this interpretation belies the fact that the Legislature specifically defined "source" to include self-employment, as stated above. Therefore, the Legislature intended that the disclosure of self-employment was the disclosure of a source of income that would satisfy the requirements of the Ethics Act. Accordingly, we reject the interpretation of the Commonwealth Court in *deYoung II.*

Based on the reasoning above, we hold that Paulmier's first statement of financial interests did not comply with Section 1105 of the Ethics Act, because he did not disclose the individual or business source of his rental income. But, as Paulmier did amend in a timely manner and then disclosed one of the two statutorily defined sources of his rental income as the Act requires, we hold that the Commonwealth Court improperly struck the candidate from the ballot, which action we reversed by *per curiam* order dated April 24, 2007.

Justice EAKIN, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice CASTILLE, Justice SAYLOR and Justice BAER file concurring opinions.

Justice BAER concurring.

I join the Majority's Opinion in full. I agree with the Majority's holding that the fatal defect rule contained in Section 1104 of the Ethics Act should be limited to barring from the ballot those candidates who fail to file statements of financial interests or who file them in an untimely manner. Maj. Op. at 445, 937 A.2d at 371. Further, I agree with the Majority's conclusion that when read together, the Ethics Act, 65 Pa.C.S. § 1101, *et seq.*, and the Election Code, 25 P.S. § 2600 *et seq.*, permit candidates, who file timely statements of financial interests in good faith, but nevertheless containing facial material defects, the ability to amend timely their statement to correct such defects. I write separately to address why I have taken a somewhat contrary position in prior cases, but now agree with the conclusions set forth by the Majority.

As indicated by the Majority, our Court has dealt with the fatality rule contained in Section 1104 of the Ethics Act in various ways with regard to timely statements of financial interests, depending upon the defect appearing on the form.[1] On the one hand, we have found fatal certain errors of omission contained in a statement and held that such errors are not subject to amendment. *See e.g. In re Anastasio*, 820 A.2d 880 (Pa.Cmwlth.Ct.2003), *affirmed per curiam without opinion*, 573 Pa. 512, 827 A.2d 373 (2003)(finding a fatal defect where a candidate erroneously indicated "none" on his timely filed statement of financial interest in the section of the statement requiring the reporting of any direct or indirect source of income over $1,300 pursuant to Section 1105(b)(5) of the Ethics Act,); *In re Braxton*, 583 Pa. 35, 874 A.2d 1143 (2005) (*per curiam*) (reversing the Commonwealth Court's

1. The fatal defect rule provides:

No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.

65 Pa.C.S. § 1105(b)(3).

order permitting a candidate to amend a timely filed statement of financial interest which did not disclose the sources of his rental income and the names and addresses of creditors holding mortgages on his rental properties in violation of Sections 1105(b)(4) and (b)(5) of the Ethics Act); *In re Katofsky,* 582 Pa. 557, 872 A.2d 1196 (2005) *(per curiam)* (reversing the Commonwealth Court's decision permitting a candidate to remain on the ballot where his statement of financial interest failed to disclose sources of income which were not ascertainable from the face of such statement); *In re Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006)(finding candidate's indication of "none", in the block of financial interest statement requiring the reporting of direct or indirect sources of income over $1,300, fatal to candidate's appearance on the ballot where candidate did, in fact, have such income).

On the other hand, we have concluded that certain errors of omission are subject to amendment where the omitted information is contained elsewhere on the form. *See In re Benninghoff,* 578 Pa. 402, 852 A.2d 1182, 1187 (2004)(interpreting the fatal defect rule of the Ethics Act as permitting an amendment to a timely filed financial statement where a candidate has substantially complied with the Ethics Act, in that all of the statutorily required disclosures "can be facially obtained from the information provided on the form as a whole.").

As the author of *Littlepage* and *Benninghoff,* I attempted to draw fine distinctions between the different defects contained in the various financial interest statements filed by candidates because I believed the need for full disclosure in accordance with the goals for the Ethics Act was paramount. *See* 65 Pa.C.S. § 1101.1 ("[T]his chapter should be liberally construed to promote complete financial disclosure as specified in this chapter."). Specifically, it was my belief that permitting candidates to amend errors of complete omission would undermine the Ethics Act's goal of full financial disclosure by allowing those who omitted material information the ability to either wait-out the period for challenge in the hope that they would not "get caught", or, if "caught", simply supply the information on an amended form, rendering their initial omis-

sions harmless error. Accordingly, I viewed the fatality rule as the legislature's harsh attempt to avoid this type of scenario.[2] Nevertheless, in focusing primarily on the Ethics Act's goal of full financial disclosure, and expanding the fatality rule beyond instances of failure to file or untimely filings, I agree with the Majority that the equally important goals of the Election Code, which is to be liberally construed to protect the voting franchise and a candidate's right to appear on the ballot, have been undermined. Strict interpretation of the fatality rule has resulted in the child's game of "gotcha" through far too many challenges based upon technical omissions, without regard to whether they were made through oversight, misunderstanding of the instructions or simple inadvertence, as opposed to bad faith. This Court's upholding of these challenges has resulted in preventing potential candidates from running for office; a result directly in tension with the Election Code's goals. *See e.g. Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006) (despite trial court finding that candidate's omission on his financial disclosure form did not reflect bad faith, candidate was struck from the ballot based upon strict reading of the fatality rule).

Thus, in my view, as eloquently explained by the Majority, because it is clear that the intent of the Legislature is to encourage both full financial disclosure and protect voter choice, when read together, such intents are best served by a rule that permits a good faith timely filer to amend a statement of financial interest in order to come into full compliance "giving the public both the benefit of full financial disclosure and the broadest choice of representatives." Maj. Op. at 445, 937 A.2d at 371.

I have noted several times herein my view that good faith remains a prerequisite to any amendment. As the Majority

**2.** In this regard, in *In re Carroll,* 586 Pa. 624, 896 A.2d 566, 578 (2006) (Baer, J., dissenting), I observed that in the years following the legislature's amendment of the Ethics Act to include the fatal defect rule, "the legislature has made no effort to alleviate the more severe effects spawned by the decisions of the Commonwealth Court and this Court ... even when those cases set aside nomination petitions due to omissions from timely but incomplete Statements."

points out, Section 1105(a) of the Ethics Act, 65 Pa.C.S. § 1105(a), maintains the requirement that the information contained on a statement of financial interest be provided to the best of the knowledge, information and belief of the person required to file, thereby preserving this standard. Thus, I emphasize that, in my view, omissions found by a court of original jurisdiction to be intentional and, thus, in bad faith, would not be subject to amendment and would, therefore, lead to the removal of a candidate from the ballot. I believe the Majority's decision is fully in agreement with this proposition.

Accordingly, despite my prior expressions to the contrary, I now am able to join the Majority's decision in full, permitting candidates who file timely, and in good faith, statements of financial interests containing material omissions with their nomination petition the ability to amend such statements and to bring them into compliance with the requirements of the Ethics Act.

Justice SAYLOR concurring.

Respectfully, I do not regard the plain-meaning approach to the statutory fatal-defect rule, which has been in place for the past several years, as being amenable to abandonment under the exception to *stare decisis* pertaining to erroneous rulings of law.

As the majority recognizes, there are sound reasons supporting the longstanding requirement of adherence to precedent. *See generally Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991) (emphasizing the role of precedent in furthering "the evenhanded, predictable, and consistent development of legal principles, . . . reliance on judicial decisions, and . . . the actual and perceived integrity of the judicial process."). Moreover, on issues of statutory construction, legislative bodies are free to address judicial holdings with which they disagree, and accordingly, *stare decisis* should be afforded "special force" in such matters. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 172–73, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989); *cf. In re Burtt's Estate,* 353 Pa. 217, 231, 44 A.2d 670, 677 (1945) ("A statutory

construction, once made and followed, should never be altered upon the changed views of new personnel of the court.").

Here, the majority recognizes the doctrine of *stare decisis,* but chooses to invoke the exception for erroneous legal rulings. It is true that, in matters of statutory construction, departure from *stare decisis* is warranted where the Court has "distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated." *Mayhugh v. Coon,* 460 Pa. 128, 135, 331 A.2d 452, 456 (1975). From my perspective, however, this Court's plain-meaning approach to the statutory fatal-defect rule was, and remains, an entirely reasonable application of settled principles of statutory interpretation. The relevant statutory provision prescribes that, "failure to file the statement [of financial interests] in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot." 65 Pa.C.S. § 1104(b)(3). In case after case over the past four years, this Court has recognized that "the provisions of this chapter," *i.e.,* the Public Official and Employee Ethics Act (the "Act"), include Section 1105, which sets forth the required content of a statement of financial interests. *See* 65 Pa.C.S. § 1105(b).

Today, however, the majority effectively deems such approach irrational and concludes that it was always the Legislature's intent to apply the fatal defect rule only in a single circumstance—when a statement of financial interests is not filed in accordance with one provision of the Act, *i.e.,* the section governing the timing of the statement's filing, 65 Pa.C.S. § 1104(b). *See* Majority Opinion at 445 – 47, 937 A.2d at 371–72. However, such interpretation is facially inconsistent with the plain meaning of the fatal defect rule, which, again, applies when a statement is not filed "in accordance with the provisions of this *chapter.*" 65 Pa.C.S. § 1104(b)(3) (emphasis added). Had the Legislature meant to confine its application to timing issues, it would have been a simple matter to say so directly, or to merely require filing "in accordance with the provisions of this section" (as the timing

requirements are self-contained within the same section of the Act as the fatal defect provision), rather than "in accordance with the provisions of this *chapter*," as is actually prescribed. 65 Pa.C.S. § 1104(b)(3) (emphasis added).[1]

I do not dispute that the majority's present construction, as ably developed by Mr. Justice Castille in his previous responsive opinions in this arena, represents a legitimately restrained approach to the fatal defect provision. Further, such construction carried substantial force from the standpoint of writing on a clean slate, in the same way as did the interpretation that prevailed. Indeed, my personal perspective is that the approach maintained by Justice Castille and presently adopted by the majority represents the better policy by some large measure.[2] Because, however, the interpretation upon which this Court settled years ago follows the plain language of the governing statute, I fail to see how it is in any sense unreasoned. Thus, I believe that any remaining policy choice to be made at this point in time is best left to the Legislature. Certainly the Assembly is aware of our decisions in this line, and, ordinarily, its continuing inaction would give rise to an inference that it has been, and remains, satisfied.

1. Indeed, in the sentence immediately preceding the fatal defect provision, the Legislature demonstrated its ready ability to make direct reference to the paragraphs of Section 1104 governing timing. *See* 65 Pa.C.S. § 1104(b)(3) ("No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests *as set forth in paragraphs (1) and (2)*." (emphasis added)). To the degree that the majority is focusing on the word "filed" within the fatal defect rule, it is common to use the term to ensure compliance with a broad range of requirements. For example, when Pennsylvania courts indicate that a pleading is to be "filed in accordance with the Rules of Civil Procedure," they are not merely indicating that the pleading must be filed on time.

2. Parenthetically, nonetheless, I do believe it is necessary to bear in mind this Court's admonition that "the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process." *Petition of Cianfrani,* 467 Pa. 491, 494, 359 A.2d 383, 384 (1976). Under the majority's *in pari materia* construction of the Act, such admonition is equally relevant here.

Finally, I note that I joined the *per curiam* order in this case solely because I would have supported an incrementally broader reading of the substantial compliance approach to the fatal defect provision arising under *In re Benninghoff,* 578 Pa. 402, 852 A.2d 1182 (2004).

Justice CASTILLE concurring.

I join the Majority Opinion in its entirety. I do so because it adopts the position I have maintained since the Court's affirmance of the Commonwealth Court's opinion in *In re Nom. Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth.2003), *aff'd per curiam without opinion,* 573 Pa. 512, 827 A.2d 373 (2003). Specifically, today's Majority, construing the Ethics Act and the Election Code together, holds that: "the fatality rule announced in Section 1104 of the Ethics Act was intended by the Legislature to bar only those candidates from the ballot who fail to file statements of financial interests or who file them in an untimely manner." Majority Op. at 445, 937 A.2d at 371. This construction is consonant with the position I set forth in my Concurring Opinion in *In re Nom. Petition of Benninghoff,* 578 Pa. 402, 852 A.2d 1182, 1192 (2004) (Castille, J., joined by Eakin, J., concurring) ("Given the occasion for the amendment [to the Ethics Act which added the "fatal defect" language], I would conclude that fatal defects are limited to **untimely** filings. Mere defects or omissions in **timely** filings, such as the ones at issue here, should be subject to amendment.") (noting agreement with *Petition of Cioppa,* 533 Pa. 564, 626 A.2d 146, 148–49 (1993)) (Opinion Announcing Judgment of Court by Nix, C.J.). I agree with the Majority that our holding today necessitates overruling and/or disapproving *Anastasio* and the line of cases which have relied upon its *per se* rule.[1]

1. I have joined decisions applying *Anastasio* and/or *Benninghoff* strictly on grounds of *stare decisis. See, e.g., In re Nom. Petition of Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006). *Accord id.* at 1241 (Eakin, J., concurring).

 While stare decisis serves invaluable and salutary principles, it is not an inexorable command to be followed blindly when such adherence leads to perpetuating error. *See Mayle [v. Pa. Dept. of Highways],* 479

I also write to note that, although the Majority approves the "rationale" of the *Benninghoff* case to the extent it recognized, where *Anastasio* did not, the necessity of aligning the Ethics Act and the Election Code, today's holding does not adopt *Benninghoff's* "substantial compliance" rule. The fashioning of that rule was made necessary by the effect of the unfortunate *Anastasio* line. The Court having eradicated the *Anastasio* cancer, the half-cure of *Benninghoff* has outlived its usefulness.

Pa. 384, 388 A.2d [709,] 720 [(1978)] ("[T]he doctrine of stare decisis is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish.").

*Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918, 967(2006). The experience of the last few election cycles, where it became apparent that the *Anastasio* approach had become a potent political weapon, resulting in the courts being inundated with election challenges premised upon supposed "fatal defects," and candidates being removed for a variety of minor perceived "infractions," reaffirmed my belief that such was not the General Assembly's intention and that *Anastasio*, which was affirmed by this Court without explanation, required revisiting.