**[J-99-2018] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| S & H TRANSPORT, INC., | : | No. 8 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 242 CD |
| | : | 2017 entered October 5, 2017 |
| v. | : | Reversing the Order of the Court of |
| | : | Common Pleas of York County, Civil |
| | : | Division, at No. 2012-SU-4143-54, |
| CITY OF YORK, | : | dated February 7, 2017, entered |
| | : | February 9, 2017. |
| Appellee | : | |
| | : | ARGUED:  December 5, 2018 |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED:  July 17, 2019**

I respectfully dissent.

At issue is whether appellant, S & H Transport, Inc. ("S & H"), which is a broker of freight services, may claim a "freight delivery exclusion" when calculating the amount of business privilege tax ("BPT") on gross receipts it owes to appellee, the City of York.  In my view, the Commonwealth Court correctly determined S & H may not claim the exclusion based on a plain reading of the York Business Privilege and Mercantile Tax Ordinance ("Ordinance"), York Business Privilege Tax Rules and Regulations ("Regulation"), and the Local Tax Enabling Act ("LTEA"), 53 P.S. §6924.101-6924.901.  The majority determines the exclusion under the LTEA, *id.* at §6924.301.1(f)(12)(ii) (excluding from any municipality's BPT of gross receipts those "charges advanced by a seller for freight, delivery or other transportation for the purchaser in accordance with the terms of a contract of sale") is inapplicable, and does "not bar the City from imposing its

BPT on the monies S & H receive[s] from its brokered shipping arrangements."  Majority Op. at 17.   The majority concludes, however, that the exclusionary language in the local Regulation (excluding from the BPT those "gross receipts which constitute … [f]reight delivery or transportation charges paid by the seller for the purchaser") is susceptible to several reasonable interpretations — specifically, the word "seller" can be read broadly enough to encompass one who is engaged in the sale of services only, such as S & H. *See id.* at 19, *citing* Regulation §206(j)(2).   On that basis, the majority finds the Regulation's language ambiguous, and determines it must be construed in favor of the taxpayer and against the taxing body.   I disagree.   The plain language controls and compels the conclusion that the freight delivery exclusion is inapplicable under both the LTEA and the Regulation.   Accordingly, I respectfully dissent.

The BPT at issue places a "tax on every dollar of the whole or gross volume of business transacted within the territorial limits of the City[.]"  Ordinance Article 343.02(a). "Business" as defined by the Ordinance is "any activity … including but not limited to … the sale of merchandise or other tangible personalty **or** the performance of services." Ordinance Article 343.01(a) (emphasis added).   The term "gross volume of business" is defined as "the money or money's worth received by any vendor in, or by reason of, the sale of goods, wares, merchandise **or** services rendered."   *Id.* at Article 343.01(f) (emphasis added).   The Regulation defines "sale" as "the passing of ownership from a seller to a buyer for a price" and defines "service" to mean "any act or instance of helping or benefiting another for consideration."  Regulation §201.

In my view, the plain language and meanings of the words contained in the Ordinance and Regulation establish that sales and services are separate activities. Moreover, the activities are separately taxed under the BPT, with services being taxed at

a higher rate than sales.[1]  The definition of "gross volume of business" is money received for "the sale of goods, wares, merchandise, **or** services rendered." Ordinance Article 343.01(f) (emphasis added).  Under principles of statutory construction, words and phrases are construed according to the rules of grammar, and the use of the disjunctive "or" in the Ordinance sets the phrase "services rendered" apart from "sales."  *See* 1 Pa.C.S. §1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]"); *In re Nomination Petition of Paulmier*, 937 A.2d 364, 373 (Pa. 2007) ("The word 'or' is defined as a conjunction 'used to connect words, phrases, or clauses representing alternatives.'  In other words, 'or' is disjunctive.  It means one or the other of two or more alternatives.") (citation omitted).

I am of the position, if the local government entity that drafted the Regulation and Ordinance intended services rendered and sales to be one and the same, it would not have used the disjunctive "or," but the conjunctive "and" — and would have defined "gross volume of business" as "the sale of goods, wares, merchandise, **and** services."  Reading the Regulation's exclusion in concert with the definitions of "business" and "gross volume of business" contained in the Ordinance, I see no ambiguity in the term "seller" which might support application of the exclusion to business conducted by S & H.  Additionally, even if it was plausible to construe the term "seller" contained in the exclusion to include one involved in the sale of "services rendered" or sale of "the performance of services," such that a "seller" might be deemed a purveyor of services and not "goods, wares or merchandise," as the majority determines that phrase might be construed, the plain

---

[1] The Ordinance provides "on receipts attributable to the performance of services" the rate imposed will be 3.5 mills ($3.50 on every $1000) of "gross volume of business[.]" Ordinance Article 343.02(a)(1).  The rate imposed on receipts for the performance of services is greater than the rate imposed on wholesale sales (1 mill) and retail sales (1.5 mills).

language of the word "purchaser" in the exclusion contained in the Regulation and LTEA renders the exclusion inapplicable here.

S & H simply does not remit "charges paid by the seller **for the purchaser**[,]" Regulation §206(j)(2) (emphasis added), and it does not handle "charges advanced by a seller for freight, delivery or other transportation **for the purchaser**." 53 P.S. §6924.301.1(f)(12) (emphasis added). S & H is a freight brokerage company. It acts as a middleman that connects its customers, the sellers of products, by arranging the shipping of products between sellers and purchasers of those products through independent carriers. Shipping charges are paid by the seller of a product through the freight broker, S & H. This arrangement is strictly a pass-through transaction. S & H, however, does not remit or advance the seller's payment to the **purchaser**. Instead, S & H remits or advances the seller's money to the **carrier**, *i.e.* another provider of services, and not the **purchaser**, *i.e.* the entity purchasing and ultimately receiving the shipped goods.[2] The majority's determination the "purchaser" in such transactions is the "shipper of goods or commodities[,]" *see* Majority Op. at 20, is simply not a plausible reading of the plain words of the Regulation, Ordinance and LTEA.

Finally, I note all parties concede the "pass-through" nature of the monies collected by S & H from sellers of goods that it transmits to freight carriers. I disagree with any suggestion such pass-through payments do not amount to gross receipts. *See Wightman Health Ctr. v. Pittsburgh*, 430 A.2d 717 (Pa. Cmwlth. 1981) (Medicare, Medicaid and other third party payments to healthcare center not excluded from gross receipts for purposes

---

[2] As the Commonwealth Court aptly noted, "S & H is neither the seller nor the purchaser in the transactions at issue but merely a broker of services." *S & H Transport, Inc. v. City of York*, 174 A.3d 679, 683 (Pa. Cmwlth. 2017). Neither, in my view, does S & H advance a seller's money covering the cost of shipment "for the purchaser." *See* Regulation §206(j)(2); *see also* 53 P.S. §6924.301.1(f)(12).

of Pittsburgh BPT, even though center was merely a conduit for flow of funds).

Accordingly, I dissent and would affirm the order of the Commonwealth Court.