J-S34006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IRIS ORTIZ | : | |
| | : | |
| Appellant | : | No. 1227 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 14, 2024
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0003885-2021

BEFORE: STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.:           **FILED: FEBRUARY 17, 2026**

Appellant, Iris Ortiz, appeals from her judgment of sentence of ten to twenty years' imprisonment for aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) and two years' probation for conspiracy to commit simple assault. Appellant argues that the evidence is insufficient to sustain her aggravated assault conviction, because (1) she did not stab the victim or act as an accomplice in her stabbing, and (2) the victim did not suffer serious bodily injury. We affirm.

Appellant and two codefendants, Sherese Jones and Philip Whitted, were charged with assaulting the victim, Shonda Seals. Appellant, Jones and Whitted were tried together before a jury.

The evidence adduced during trial establishes that on the evening of July 17, 2021, Seals went out with friends and relatives in Lancaster to commemorate the anniversary of her brother's death. Seals and her family

eventually made their way to Prince of Subs, where they stayed until closing time around 1:30 a.m.

At Prince of Subs, Seals observed Whitted arguing with a woman. This argument continued outside of the bar. Seals said something to Whitted about arguing with the women, at which point Whitted became upset with Seals. At the same time, Seals saw her daughter, Jasmine, confronting Appellant. Seals struck Appellant because Seals believed that Appellant was preparing to strike her daughter. At this point, Jones swung at Seals' daughter. General argument ensued among the two groups. Appellant pulled up in her silver four-door vehicle with Whitted in the passenger seat. Jones entered the backseat of Appellant's vehicle, and Appellant drove away. N.T. 139-48.

A second confrontation took place slightly over one hour later. Seals returned to the area of her home, drove around looking for a parking spot, and eventually parked around the corner from her home on Marshall Avenue in Lancaster. At 2:45 a.m., while parking her car, Seals was on the phone with a friend. At this moment, Appellant's vehicle pulled up next to Seals' vehicle. Appellant was driving the car and was accompanied by Jones and Whitted. The window was down in Appellant's vehicle. Seals heard Appellant state, "got you, got you" and laugh. *Id.* at 149-53.

Seals testified as follows about the events that followed. Jones exited the vehicle and came towards Seals, and a fistfight began between Jones and Seals. Seals did not see anything in Jones' hands during the fight. Nor did Seals hear Jones yell to Appellant or Whitted or ask them to join the fight.

About two minutes after Jones and Seals began fighting, Appellant and Whitted exited the vehicle and joined the fight. Seals fell and hit her head, and Whitted, Jones, and Appellant were on top of her and hitting her. At this point, while all three defendants were standing over her, Seals felt a pain from "something other than … a punch." *Id.* at 154-55, 197-98.

Seals began walking towards her daughter and could feel that her leg was wet. She put her hand on her leg and saw her hand covered in blood. Seals' daughter called 911 while Seals sat on the steps of her home. Seals could hear her blood coming down her leg and falling on the ground. Deciding that Seals could not wait for an ambulance to arrive, Seals' daughter drove her to the hospital. Seals was unable to tell which defendant stabbed her, but she testified that all three defendants were near her at the time she was stabbed. *Id.* at 157-64.

The court admitted Dr. John Lee, a surgeon at Lancaster General Hospital, as an expert witness in the fields of trauma surgery and trauma medicine. Dr. Lee testified that he treated Seals at the hospital on July 18, 2021, for two lacerations on her buttock and back right upper thigh. Dr. Lee explained that the size of the wounds established that Seals was stabbed rather than slashed. Dr. Lee considered Seals to be at the highest level of trauma due to the mechanism of her injury and her low blood pressure. His immediate assumption was that Seals was bleeding to death. He also believed that Seals had a life-threatening injury because her blood pressure was low.

Due to her low blood pressure, Seals was required to undergo a blood transfusion. *Id.* at 378-92.

Appellant testified in her defense. According to Appellant, on the night of July 17, 2021, she was partying at a bar in Lancaster until around 1:30 a.m. and left the bar alone in her 2007 Chrysler Sebring. She drove past Prince of Subs and saw Whitted arguing with a group of women. She exited her vehicle and approached Whitted, began arguing with Seals' daughter, and was struck by a hard object, causing her head to bleed. She returned to her car with Whitted and Jones. The three left Prince of Subs and drove around Lancaster trying to decide where to take Whitted. While driving, Appellant saw Seals and pointed her out to Whitted and Jones. Jones jumped out of Appellant's vehicle and began fighting Seals. Appellant testified that she exited her vehicle at the same time[1] and joined in the fight. The fight lasted for about 45 seconds, and Appellant admitted punching Seals' face and upper body. Appellant denied stabbing Seals, having a knife, or seeing a knife that night. Appellant admitted, however, that she never saw Jones get behind Seals. After the fight, Appellant drove Jones home but could not remember where she dropped off Whitted. She claimed that she did not find out that Seals had been stabbed until the police contacted her. *Id.* at 431-52.

_____

[1] Appellant's testimony on this point differed from Seals' testimony. Seals testified that Appellant did not leave the vehicle until two minutes after Jones exited the vehicle.

- 4 -

Whitted also testified in his defense. He testified that he saw Seals hit Appellant in the face with a shoe outside Prince of Subs. After leaving Prince of Subs, he and Jones drove around in Appellant's car, and Appellant was very upset about being hit by Seals. Whitted testified that he wanted Appellant to drop him off, but Appellant told him to wait. Whitted then saw Appellant and Jones fighting Seals and saw Seals on the ground during the fight. Following the fight, he heard Appellant and Jones saying "yeah, we fucked that bitch up." He did not see who stabbed Appellant, but he testified that he never saw Jones get behind Seals. *Id.* at 479-523.

On the final day of trial, the Commonwealth argued that each defendant could be found guilty for aggravated assault either as an accomplice or as a co-conspirator. The court charged the jury that it could find each defendant guilty of aggravated assault on either or both of these theories of liability. *Id.* at 648-50. On the separate charge of conspiracy, the court instructed that if the jury found any defendant guilty of conspiracy, it should specify on the verdict slip whether the defendant was guilty of conspiracy to commit aggravated assault or conspiracy to commit simple assault. *Id.* at 656-57.

The jury found Appellant guilty of aggravated assault (causing serious bodily injury) and conspiracy to commit simple assault. The jury found Jones guilty of the same offenses, and it acquitted Whitted of all charges. On August 14, 2024, the court entered sentence. Appellant filed a timely appeal to this Court, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

- 5 -

1. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence to prove Appellant stabbed the complainant or was an accomplice to a stabbing.

2. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence the complainant suffered serious bodily injury.

Appellant's Brief at 4.

Both of Appellant's arguments are challenges to the sufficiency of the evidence underlying her conviction for aggravated assault. Appellant does not challenge her conviction for conspiracy to commit simple assault.

In a challenge to the sufficiency of the evidence, our standard of review is

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

***Commonwealth v. Smith***, 206 A.3d 551, 557 (Pa. Super. 2019).

The jury found Appellant guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), which provides that a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." **Id.** Appellant argues that the evidence failed to satisfy Section 2702(a)(1) because

(1)   Seals did not suffer "serious bodily injury"; and

(2)   she did not "cause" Seals' injuries, because there was no proof that she was the individual who stabbed Seals, and she was not an accomplice to the stabbing.

We first address whether the evidence demonstrates that Seals suffered serious bodily injury. The Crimes Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death **or** which causes serious, permanent disfigurement, **or** protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301 (emphasis added). The term "or" in this statute "is disjunctive. It means one or the other of two or more alternatives." **In Re Paulmier**, 937 A.2d 364, 373 (Pa. 2007). "This Court must interpret 'or' in its normal disjunctive meaning unless such an interpretation would produce an absurd result." **Commonwealth v. Nobles**, 198 A.3d 1101, 1110 (Pa. Super. 2018).

Appellant contends that Seals did not suffer serious bodily injury because she was not stabbed in a vital part of her body, her injuries only

required stitches, and there was no protracted loss of a bodily member or permanent disfigurement. Even though these points are correct, they do not help Appellant's cause. This is because Section 2301 also defines serious bodily injury to include "bodily injury which creates a substantial risk of death." *Id.* Evidence that satisfies this phrase is, by itself, sufficient to prove serious bodily injury due to Section 2301's disjunctive phrasing.

Here, Dr. Lee, a trauma surgeon, testified that when he treated Seals on the night of the stabbing, he believed that she was bleeding to death and that her blood pressure was dangerously low. As a result, Dr. Lee found it necessary to order a blood transfusion. Construed in the light most favorable to the Commonwealth, this evidence demonstrates that Seals suffered bodily injury that created a substantial risk of death, thus satisfying the element of serious bodily injury. **See Commonwealth v. Williamson**, 330 A.3d 407, 418 (Pa. Super. 2025) (in appeal from aggravated assault conviction, evidence was sufficient to prove serious bodily harm where victim suffered blood loss from stabbing, and trauma surgeon who treated victim testified that knife wounds to neck could have caused blood loss leading to death).

We turn to Appellant's argument that she did not "cause" Seals' injuries because she did not stab Seals. We acknowledge that the evidence leaves unclear which defendant stabbed Seals. Nor does the Commonwealth argue in its brief that Appellant stabbed Seals. The Commonwealth merely states that Appellant "assaulted" Seals. Commonwealth's Brief at 11. Nevertheless,

despite the lack of clarity as to which assailant stabbed Seals, the evidence establishes Appellant's guilt as an accomplice to the stabbing.

"A person is an accomplice, and equally liable for the acts of another[,] if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." *Commonwealth v. Jones*, 339 A.3d 493, 503 (Pa. Super. 2025). The "least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Id.*

Appellant argues that the evidence fails to prove that she was an accomplice, because "[t]here was no evidence … that Appellant acted with the intent of promoting a stabbing; no evidence Appellant agreed to stab [] Seals; no evidence Appellant aided Jones in stabbing [] Seals and no evidence appellant attempted to aid Jones in stabbing [] Seals." Appellant's Brief at 12.

Viewed in the light most favorable to the Commonwealth, the evidence demonstrates that even if Jones or Whitted stabbed Seals instead of Appellant, Appellant was an accomplice to the stabbing. Earlier that night, Appellant, Jones and Whitted had an altercation with Seals and others at Prince of Subs in Lancaster. Appellant, Jones and Whitted drove away from Prince of Subs in Appellant's car. Appellant was angry that Seals hit her during the altercation. Over one hour later, while Appellant, Jones and Whitted were

driving around Lancaster, they saw Seals in her car on Marshall Avenue, and Appellant exclaimed "got you, got you." These facts indicate they had been searching for Seals after leaving Prince of Subs. Appellant and Jones immediately jumped out of Appellant's car[2] and violently attacked Seals. Whitted also joined in the attack. Seals was stabbed twice from behind. Appellant drove Jones home after the attack, and they congratulated each other by saying "yeah, we fucked that bitch up."

Whether Jones or Whitted stabbed Seals, the evidence demonstrates that Appellant, Jones and Whitted searched together for Seals, found Seals together, attacked Seals together, and left the scene together, pleased with the outcome. This chain of events demonstrates that Appellant acted in concert with Jones and is liable for Seals' stabbing as an accomplice. *See Jones*, 339 A.3d at 503 (the "least degree of concert" is sufficient to prove accomplice liability). Stated another way, the evidence fulfilled the elements of accomplice liability because Appellant "acted with the intent of promoting or facilitating the commission of [the stabbing]" and "agree[d], aid[ed], or attempt[ed] to aid [Jones] in … committing that offense." *Id.*; *see also Commonwealth v. Anderson*, 2025 WL 845106, *1, 4-5 (Pa. Super., Mar.

_____

[2] As discussed above at n.1, the testimony on this point is inconsistent. We resolve this discrepancy in the light most favorable to the Commonwealth by determining that Appellant and Jones left the car at the same time.

18, 2025) (non-precedential)[3] (evidence supported conviction for aggravated assault on basis of accomplice liability, where defendant accompanied codefendant to victim's house, codefendant demanded that victim repair wall that victim had damaged while defendant stood by silently, codefendant shot victim, and defendant and codefendant ran away together).

Relying on **Commonwealth v. Chambers**, 188 A.3d 400 (Pa. 2018), Appellant argues that the evidence is insufficient to prove that she was an accomplice. **Chambers** is distinguishable from this case. In **Chambers**, the victim (Wilson) had an argument on the street with the defendant (Chambers). When the argument began, Chambers was standing next to a white Jeep, talking to individuals inside the Jeep. A fistfight ensured between Chambers and Wilson. Chambers pinned Wilson to the ground and began striking his ribs and midsection. While Wilson was underneath Chambers, a woman wearing floral-patterned shoes sprayed mace in Wilson's face. It appears that this woman had been one of the occupants in the Jeep and had gotten out of the vehicle to join in the fray. **Id.**, 188 A.3d at 405-06. Wilson suffered broken ribs, a burned retina, a concussion, and a laceration above his eye (allegedly from a knife) that required sutures.

The trial court, sitting without a jury, found Chambers guilty of aggravated assault with a deadly weapon. The trial court determined that the

---

[3] We may cite this Court's unpublished memoranda filed after May 1, 2019 for their persuasive value. **See** Pa.R.A.P. 126(b).

mace, not the alleged knife, constituted a deadly weapon. On direct appeal, this Court affirmed Chambers' judgment of sentence. We held, *inter alia*, that Chambers was an accomplice to the mace-spraying woman, because when he began punching the victim, he prompted the woman to spray mace at Wilson. *Id.* at 407.

Our Supreme Court held that the evidence was insufficient to sustain Chambers' conviction on the basis of accomplice liability:

> [F]or Chambers to have been an accomplice to the floral-shoed, mace-spraying woman, the Commonwealth would have had to prove that he agreed to aid, aided, or attempted to aid her in assaulting Wilson with the mace. We explained above why the record lacks evidence of such an agreement. There is a similar dearth of evidence demonstrating that Chambers aided or attempted to aid the woman. Chambers was in the midst of a fist-fight when the woman began to spray Wilson with the mace. There is no indication in the testimony that Chambers knew she was going to join the fight, knew she had mace, or knew she was going to use the mace. Additionally, Chambers did nothing to assist the woman in deploying the mace. At one point during the melee, Chambers held Wilson to the ground. But the testimonial record establishes only that Chambers did so for the purpose of continuing his own assault upon Wilson, not to facilitate the woman's aggravated assault.

*Id.* at 415.

Unlike the present case, the defendant in **Chambers** did not act in concert with the mace-spraying woman, since he did not know or anticipate that she would join the fight or use mace. *Id.*, 188 A.3d at 415. Nor did he promote, aid or assist the woman's act of spraying the victim with mace. His only purpose was to "continu[e] his own assault on Wilson, not to facilitate the woman's aggravated assault." *Id.* The evidence in the present case, on

- 12 -

the other hand, demonstrates that Appellant acted in concert with Jones and Whitted because they searched for Seals together, found Seals together, attacked Seals together, left the scene together, and congratulated one another for injuring Seals. The evidence further establishes that Seals was stabbed twice during the attack. By acting in concert with Jones and Whitted, Appellant is subject to criminal liability as an accomplice to the stabbing.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/17/2026