J-S24009-20

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SHAWN  JACKSON | : | |
| Appellant | : | No. 156 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004748-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SHAWN JACKSON | : | |
| Appellant | : | No. 157 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008647-2017

BEFORE:   BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 08, 2020**

Appellant, Shawn Jackson, appeals from the judgment of sentence of an aggregate term of 27½-55 years' incarceration, plus 30 years' consecutive probation, imposed after he pled guilty to several sexual and human-trafficking offenses related to a 14-year-old victim.  Appellant challenges the

_____

* Retired Senior Judge assigned to the Superior Court.

discretionary aspects of his sentence. He also claims that his convictions for involuntary servitude and trafficking in minors should have merged for sentencing purposes. After careful review, we affirm.

The trial court summarized the facts leading to Appellant's guilty plea as follows:

> On April 23, 2017, a few weeks after her fourteen birthday, the victim[,] M.D.[,] ran away from home and asked her adult friend, co-defendant Shakey Copper, if she could stay at his house. N.T.[,] 10/25/19[,] at 8-9. When she arrived, she and Copper had vaginal intercourse. *Id.* at 9. Copper then sent her to the home of co-defendants Fantasia Gail and Reggie Jamal Fields, who told her that they would be prostituting her out to other men using a website called Backpage. *Id.* M.D. was told that she would be shot if she tried to escape. *Id.* at 10[.]
>
> [Appellant] was responsible for driving M.D. to approximately 15 outcalls, "where different men had sex with the complainant both vaginally and orally for different prices, sometimes $60, sometimes $80." [*Id.*] at 9. That money went to [Appellant], who split it with his co[-]defendants, but not the victim. *Id.*
>
> [Appellant] personally had vaginal intercourse with M.D. three times and oral intercourse with [her] three times, all against her will. *Id.* The co-defendants also starved M.D., then [Appellant] made her crawl like a dog for a dog bowl full of cereal while another co-defendant recorded it on his cell phone and posted it on Snapchat. *Id.* at 10[.]
>
> After three days, M.D. was able to escape and run away to Temple Hospital, despite the fact that [Appellant] followed her. [*Id.*] at 10[.] She described [Appellant] to the police and then identified him by photo array as one of her traffickers and rapists. [*Id.*]
>
> On May 6, 2017, while [Appellant] was incarcerated [and] awaiting trial, he made a phone call to his sister. *Id.*[] He told his sister to look up M.D. on his Facebook account and that he would write her a letter explaining what to do next. *Id.* On June 13, 2017, M.D. received a Facebook message from the account that [Appellant] told his sister to use. *Id.* The message said: "Whoever you is, if you come to court, bitch, it's over for you, and

I know what school you go to and I know where your mom live at. So if you show up, I'm going to get you touched or if you show up, say you lied about everything and you said it because you was mad." ***Id.***

Trial Court Opinion ("TCO"), 6/28/19, at 3-4 (citations to court exhibits omitted).

On September 25, 2018, Appellant pled guilty at CP-51-CR-0004748-2017 to rape, involuntary deviate sexual intercourse ("IDSI"), unlawful contact with a minor, sexual exploitation of children, involuntary servitude, trafficking in minors, and conspiracy to commit trafficking in minors.[1] That same day, he pled guilty at CP-51-CR-0008647-2017 to two counts of intimidation of a witness, and one count each of conspiracy to intimidate a witness and terroristic threats.[2]

On November 19, 2018, the trial court sentenced Appellant to 10-20 years' incarceration for rape, 5-10 years' incarceration for IDSI, 5-10 years' incarceration for unlawful contact with a minor, 2½-5 years' incarceration for sexual exploitation of children, 2½-5 years' incarceration for conspiracy to commit trafficking in minors, 2½-5 years' incarceration and ten years' probation for involuntary servitude, 2½-5 years' incarceration and ten years' probation for trafficking in minors, 2½-5 years' incarceration for intimidating

---

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 6318(a)(1), 6320(a), 3012(a), 3011(b), and 903, respectively.

[2] 18 Pa.C.S. §§ 4952(a)(2), 4952(a)(3), 903, and 2706(a)(1), respectively.

a witness, and ten years' probation for conspiracy to intimidate a witness.[3]
Appellant filed a timely post-sentence motion for reconsideration of his
sentence, which the trial court denied after a hearing held on December 21,
2018.

Appellant then filed a timely notice of appeal in each of the above-
captioned cases, and he also filed a timely, court-ordered Pa.R.A.P. 1925(b)
statement. The trial court issued its Rule 1925(a) opinion on June 28, 2019.
Appellant filed a motion to consolidate his appeals, which this Court granted
by order dated November 8, 2019.

Appellant now presents the following questions for our review:

1. Did the sentencing court abuse its discretion in imposing a
sentence that is manifestly excessive and unreasonable?

2. Did the sentencing court err by not merging the sentences for
involuntary servitude and trafficking [in] minors?

Appellant's Brief at 4. For ease of disposition, we will address these claims in
reverse order.

## **Merger**

Appellant asserts that his sentences for trafficking in minors and
involuntary servitude should have merged. He argues that both crimes arose

---

[3] Appellant's sentences for sexual exploitation of children, involuntary
servitude, and trafficking in minors were ordered to run concurrently. Thus,
his aggregate sentence is 27½-55 years' incarceration, followed by 30 years'
probation.

from a single criminal act, and that all the elements of involuntary servitude are subsumed within the elements of trafficking in minors.

> Whether [the a]ppellant's convictions merge for sentencing is a question implicating the legality of [the a]ppellant's sentence. Consequently, our standard of review is *de novo* and the scope of our review is plenary. **See Commonwealth v. Collins**, 564 Pa. 144, 764 A.2d 1056, 1057, 1057 n. 1 (2001). "The best evidence of legislative intent is the words used by the General Assembly." **In re Nomination Petition of Paulmier**, 594 Pa. 433, 937 A.2d 364, 372 (2007). Further, this Court must, whenever possible, give effect to all provisions of a statute, 1 Pa.C.S. § 1921(a), and unless a phrase has a technical, peculiar, or otherwise defined meaning, that phrase must be construed according to its common and approved usage. 1 Pa.C.S. § 1903(a). Of course, this Court presumes that the General Assembly does not intend absurd or unreasonable results when it enacts a statute. 1 Pa.C.S. § 1922(1).
>
> Section 9765 provides: …
>
>> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S. § 9765.
>
> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

**Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).

Here, the trial court determined that the offenses of trafficking in minors and involuntary servitude do not merge, because "one offense did not subsume all of the elements of the other and they did not arise from a single act." TCO at 13. Because we agree that the charges here did not arise from

- 5 -

a single criminal act, we need not reach the more difficult question of whether the at-issue statutes merge under the elements test.[4]

As explained by the trial court,

even if trafficking in minors and involuntary servitude would otherwise merge, in this specific case they should not, because in this case these two crimes did not arise from a single act. To determine 'whether a defendant is charged based on the same' or separate acts; courts generally look to the initial criminal complaint and information, then to the general testimony and record. ***Commonwealth v. Kimmel***, 125 A.3d 1272, 1276 (Pa. Super. 2015); ***Commonwealth v. Jenkins***, 96 A.3d 1055, 1062 (Pa. Super. 2014) (finding no merger after considering the information as well as the victim's testimony).

In the present case, the information generally states the applicable statutes[;] however, it makes it clear that [Appellant] committed his crimes on April 23, 24, and 25 of 2017. After examining the remainder of the record, it is clear that [Appellant] raped, trafficked, and transported the victim several times throughout those three days. N.T.[,] 10/25/18[,] at 1-13; N.T.[,] 11/19/18[,] at 1-50. This was not based on one single act[;] the court properly sentenced [Appellant] based on at least two separate instances.

TCO at 14-15.

Appellant contends, however, that

both crimes arise from a single criminal act. [Appellant] pled guilty to transporting the complainant, a minor, to various locations, where she had sexual intercourse against her will in

_____

[4] Application of the elements test is not straightforward, as the at-issue offenses are clearly related and share similar elements. Given that the merger test requires satisfaction of both the elements test, ***and*** the predicate that both offenses arose from the same conduct, failure to satisfy either prong defeats merger. As we discuss, *infra*, these offenses did not arise out of the same conduct and, thus, the offenses cannot merge. We reserve our consideration of the elements test for a future matter where it is clear that both offenses are alleged to have arisen out of the same conduct.

exchange for money. These facts supported a factual basis for both convictions and arise from a single criminal act. The sentencing court argues that the offenses do not arise from a single criminal act because they occurred over a period of three days. ***See*** [TCO at] 14-15. However, [Appellant] was not charged with three separate counts of each offense. Rather, these crimes were committed repeatedly during a three-day span. Thus, the three days represent a continuous single criminal act.

Appellant's Brief at 19.

Appellant's argument is illogical and unsupported by any citation to relevant case law. Prostituting a child on multiple occasions, over multiple days, is not a single criminal act. As this Court has repeatedly emphasized,

[t]he threshold question is whether [the a]ppellant committed one solitary criminal act. The answer to this question does not turn on whether there was a break in the chain of criminal activity. Rather, the answer turns on whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a volume discount on crime….

***Commonwealth v. Robinson***, 931 A.2d 15, 24–25 (Pa. Super. 2007) (cleaned up).

Appellant's argument is merely a repackaged version of the "break in the chain criminal activity" and/or "volume discount" reasoning that has been thoroughly rejected by this Court. ***Id.*** Accordingly, we conclude that the offenses of involuntary servitude and trafficking in minors do not merge in this case because they did not arise out of a single criminal act. Thus, Appellant is not entitled to relief on this claim.

## **Discretionary Aspects of Sentencing**

Next, Appellant asserts that the trial court abused its discretion by imposing a "manifestly excessive and unreasonable" sentence. Appellant's Brief at 11. More specifically, he claims that the court 1) failed to consider the statutory guidelines; 2) failed to issue a written statement of reasons for imposing consecutive sentences above the recommended guideline range; 3) relied on improper sentencing factors; and 4) failed to properly balance the statutory sentencing factors set forth in 42 Pa.C.S. § 9721(b).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hoch***, 936 A.2d 515, 517-18 (Pa. Super. 2007) (citation omitted).

Before we address whether the trial court abused its sentencing discretion, we must first determine whether Appellant has properly preserved his sentencing claims for our review.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and

(4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003)….

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. ***Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. ***Id.***

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Appellant filed a timely notice of appeal, and provided a Rule 2119(f) statement in his brief. Furthermore, Appellant's sentencing claims raise substantial questions for our review. ***Commonwealth v. Derry***, 150 A.3d 987, 992 (Pa. Super. 2016) (holding claim that the trial court failed to consider Section 9721(b) sentencing factors presents a substantial question); ***Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014) (recognizing a substantial question is raised where it is alleged that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record); ***Commonwealth v. Downing***, 990

A.2d 788, 792 (Pa. Super. 2010) (concluding claim that trial court relied on improper factors raises a substantial question); *See Commonwealth v. Scassera*, 965 A.2d 247, 250 (Pa. Super. 2009) (recognizing that a claim that the sentencing court failed to consider applicable sentencing guidelines presents a substantial question). However, the Commonwealth asserts that Appellant's first three sentencing claims are waived because they were not preserved in his post-sentence motion.

In his post-sentence motion, Appellant stated, in relevant part:

2. On November 19, 2018, [Appellant] was sentenced to an aggregate sentence of 27[½] -55 year[s'] incarceration plus 30 year[s'] probation, which constitutes an abuse of discretion.

3. At sentencing, defense counsel presented multiple mitigating factors such as [Appellant]'s family support, mental health diagnoses and lack of prior mental health treatment, age and immaturity, lack and age of prior record, ability for rehabilitation, acceptance of responsibility, role in facts given rise to convictions, troubled childhood, and many other factors.

4. Nonetheless, the trial court sentenced [Appellant] on numerous charges in excess of the sentencing guidelines, in the aggravated range for other charges, above the Commonwealth's recommendation, and, given the mitigating factors, the sentence was an abuse of discretion.

Appellant's Post-Sentence Motion, 11/23/18, at 1-2 (unnumbered pages).

We are compelled to agree with the Commonwealth that the first three discretionary-aspects-of-sentencing claims raised in Appellant's brief were not preserved, explicitly or implicitly, in the post-sentence motion. Therein, Appellant did not assert that the trial court failed to consider the guideline recommendations. Nor did he claim that the court failed to provide reasons

for deviating from the sentencing guideline recommendations. There is no mention of the court's imposition of consecutive sentences, nor the use of improper sentencing factors. Accordingly, we are compelled to conclude that Appellant waived his first three discretionary-aspects-of-sentencing claims.

Thus, we only reach the merits of Appellant's last claim: that the trial court failed to properly apply the statutory sentencing factors set forth in 42 Pa.C.S. § 9721(b). Section 9721(b) provides, in pertinent part, that when considering a term of total confinement, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Id.*

Appellant argues:

Here, numerous mitigation considerations were presented to the sentencing court. First, [Appellant] accepted responsibility for his actions, even while his codefendants proceeded to trial. *See* N.T.[,] 11/19/18, 6-8. Importantly, [Appellant] did not want to put the complainant through the ordeal of trial. Second, [Appellant] presented family support as his mother spoke on his behalf. *Id.* at 19-21. She testified that, prior to being arrested, he was doing well and this case did not represent his character. *Id.* at 19. Third, [Appellant] had a clinical diagnosis of bipolar disorder, for which he had never been treated, and wanted to receive treatment. *See id.* at 11-13; *see also* Appendix C. Fourth, [Appellant] had a traumatic childhood. When he was six-years['] old[,] he was placed in foster care because his mother was addicted to drugs and would leave the house for days at a time. *Id.* at 14; *see also* Appendix D. Finally, [Appellant]'s prior record was made up of mainly non-violent offenses. *Id.* at 15; *see also* Appendix E. Specifically, Possession of a Controlled Substance in 2011, Firearms not to be Carried Without a License in 2012, Possession of a Controlled Substance in 2013, Theft by

Unlawful Taking in 2013, and Possession with the Intent to Deliver in 2014.

It is clear from the record that the sentencing court was concerned only with the impact of [Appellant]'s crimes on the complainant. His sentence, with every charge running consecutive, is fashioned in such a way as to give the complainant peace of mind that he will remain in prison for as long as possible, without any regard for his compelling need for rehabilitation. Such an excessive sentence indicates that the sentencing court's reasons were "nearly exclusively upon the need to punish and the harm caused to the victims." **Commonwealth v. Jones**, 565 A.2d 732, 733 (Pa. Super. 1989). Prior to imposing sentence, the sentencing court spoke to the complainant and focused mainly on her ability for rehabilitation. The record is completely devoid of any explanation for why the terms of incarceration would serve the interests of the community, the victim, and [Appellant]; the record makes no reference to the sentencing court's reasoning for imposing a sentence nearly three times that proposed by the defense and in far excess of the Commonwealth's recommendation. It is clear from the record that the sentencing court was so swayed by the victim impact statements and that it fashioned [Appellant]'s sentence solely to appease the interests of the complainant. Therefore, the [s]entencing [c]ourt abused its discretion in rendering its manifestly excessive and unreasonable sentence of 27½ to 55 years' incarceration plus 30 years' probation.

Appellant's Brief at 16-17 (some citations omitted).

We disagree. First, this Court has repeatedly emphasized that the failure to give adequate **weight** to mitigating factors does not raise a substantial question for our review. **See Commonwealth v. Disalvo**, 70 A.3d 900, 903 (Pa. Super. 2013). However, mitigating factors must be considered by a sentencing court pursuant to its mandate to deliberate on "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Here, the trial court indicated that

it did, in fact, consider several mitigating factors in crafting Appellant's sentence:

> The court considered mitigating factors, including that [Appellant] pled guilty and accepted responsibility for his crimes. N.T.[,] 11/19/19[,] at 8, 11, 14. The court also acknowledged that [Appellant] suffered from bipolar disorder, that his mother had a drug addiction, and that he grew up in the foster care system. *Id.* The court also considered the testimony of [Appellant]'s mother, who said that [Appellant] had been doing well before this crime occurred and that the crime did not match his character. *Id.* at 19-20.

TCO at 8-9.

These were not the only relevant factors regarding Appellant's rehabilitative needs. The trial court also considered the fact that his criminal history reflected an inability to reform. Although Appellant's prior record of four arrests as a juvenile, and seven arrests as an adult (resulting in six adult convictions), did not involve crimes quite as egregious as the current ones, he had already violated his probation five times as an adult. *Id.* at 7. This led the court to conclude that Appellant "is an unlikely candidate for rehabilitation." *Id.* We ascertain no abuse of discretion in such a conclusion.

Second, the trial court determined that Appellant's "horrific actions" in this case "far outweighed" the mitigating factors. *Id.* at 9. Indeed, the facts of this case speak for themselves in this regard. Appellant facilitated the rape of a 14-year-old child by other men on 15 occasions, sexually assaulted and/or raped her himself several times, and further dehumanized her through a shocking act of humiliation, making her beg for food like a dog. After police apprehended Appellant, he then engaged in a conspiracy to threaten the

victim from testifying against him. This is a horrific pattern of violent, predatory sexual behavior against a minor, not some isolated incident attributable to youthful indiscretion. Therefore, we ascertain no abuse of discretion in the trial court's conclusion that the not-insignificant mitigating factors pertaining to Appellant's rehabilitative needs were outweighed by the gravity of his offenses, the impact of those offenses on the life of the victim, and the need to protect the public from such behavior. This is especially true in light of Appellant's repeated failures to rehabilitate during his numerous prior interactions with the criminal justice system.

Finally, Appellant contends that his argument is supported by this Court's decision in **Commonwealth v. Coulverson**, 34 A.3d 135 (Pa. Super. 2011). In **Coulverson**, this Court held that the lower court had abused it discretion by imposing an aggregate sentence of 18-90 years' incarceration, even though that sentence was technically within the standard guideline sentencing range. **Id.** at 150.

We find **Coulverson** inapposite. First, the defendant's conduct in **Coulverson** was less severe. Coulverson raped one woman, attempted to rape another, and committed several burglaries over the course of a 3-day crime spree. **Id.** at 139-40. Here, Appellant raped a child on multiple occasions, and facilitated her rape at the hands of 15 other individuals. He then directed that the victim be threatened after he was apprehended. On this basis alone, **Coulverson** is distinguishable from the instant case.

Second, by contrast, Coulverson had no "prior record score or any record of delinquency[,]" and he fully cooperated with police after initially giving a false name, and confessed fully when questioned by police. ***Id.*** at 140, 143. The only thing similar between these cases is that both Appellant and Coulverson had severely troubled upbringings. ***Id.*** at 143.

Finally, the sentencing court in ***Coulverson*** provided "scant consideration of anything other than victim impact and the court's impulse for retribution on the victims' behalf." ***Id.*** at 148. By any measure, the trial court here provided far more justifications for the sentence it imposed, and it considered each of the relevant Section 9721(b) factors in detail, as discussed above. Accordingly, we conclude that ***Coulverson*** does not suggest Appellant is entitled to relief in the case *sub judice*. For these reasons, we discern that the sentence imposed by the trial court, although harsh, was not an abuse of the court's discretion.

Judgment of sentence ***affirmed***.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 7/8/2020*

- 15 -